## VON ZEDTWITZ v. SUTHERLAND, Alien Property Custodian, et al.

Court of Appeals of District of Columbia.
Submitted March 7, 1928. Decided May 7, 1928.

No. 4555.

I. War ⊸12—Plaintiff, in suit to recover property seized by Alien Property Custodian, has burden of proving citizenship justifying return (Trading with the Enemy Act, § 9 (b) (1), 50 USCA Appendix, § 9 (b) (1).

In suit to recover certain property from the Alien Property Custodian, under Trading with the Enemy Act, § 9 (b) (1), 50 USCA Appendix, § 9 (b) (1), authorizing return of property held by Custodian, if owner at time of seizure and return was a citizen or subject of any nation or state other than Germany, Austria, Hungary, or Austria-Hungary, plaintiff has burden of proving facts establishing citizenship justifying return.

2. Evidence ⊸322(1)—Family tradition as to residence, as bearing on right to recover property seized by Alien Property Custodian, constitutes mere hearsay.

Family tradition in relation to absence from Germany for period of years, as bearing on right to recover property seized by Alien Property Custodian, constitutes mere hearsay, and is incompetent.

3. Evidence ⊸318(7)—Certificate of German Foreign Office that person seeking to recover property seized by Alien Property Custodian had forfeited German citizenship held mere hearsay.

Certificate of German Foreign Office that person seeking to recover property seized by Alien Property Custodian had forfeited German citizenship prior to January 1, 1914, by reason of his continuous absence from Germany for more than 10 years, constituted only a narrative of a past event, and was mere hearsay.

4. War ⊸12—Evidence held to establish that person seeking return of property seized by Alien Property Custodian was either German citizen or possessed of dual citizenship (Trading with the Enemy Act, § 9 (b) (1), 50 USCA Appendix, § 9 (b) (1).

In suit to recover property seized by Alien Property Custodian under Trading with the Enemy Act (50 USCA Appendix), on ground plaintiff was not a citizen of Germany at time of seizure and therefore entitled to a return under section 9 (b) (1), 50 USCA Appendix, § 9 (b) (1), evidence held to establish that plaintiff was either a German citizen, or possessed of a dual citizenship, whereby he was bound to render military service to both German and Swiss governments, and not entitled to return of property.

Appeal from the Supreme Court of the District of Columbia.

Suit by Waldemar Konrad Ernst Anton Wilhelm Ferdinand von Zedtwitz against Howard Sutherland, as Alien Property Custodian, and another. Decree of dismissal, and plaintiff appeals. Affirmed.

J. A. Kratz, of Washington, D. C., and G. L. Shearer, of New York City, for appellant.

D. H. Stanley, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. This suit was brought by appellant as plaintiff to recover from the Alien Property Custodian certain property of which appellant was owner, and which was seized by the Custodian in the years 1918 and 1919 upon a finding that appellant was an enemy under the Trading with the Enemy Act (50 USCA Appendix). Appellant's claim is founded upon section 9

of the act, as amended March 4, 1923 (50 USCA Appendix, § 9), which provides for the return of property held by the Custodian if the owner thereof at the time of seizure was a citizen or subject of any nation or state other than Germany, or Austria, or Hungary, or Austria-Hungary, and is such citizen or subject at the time of the return of the seized property. Trading with the Enemy Act, § 9 (b) (1), 42 Stat. 1511 (50 USCA Appendix, § 9 (b) (1). It is the claim of appellant that at the times in question he was and still is a citizen of Switzerland, and accordingly within the terms of the amendment. This was denied by the Custodian. The lower court held against appellant, and dismissed his suit.

It is conceded that appellant was born on May 8, 1896, in Berlin; that both of his parents were German citizens, and that at birth he became a subject of Germany. His father died on August 18, 1896, and appellant alleges that immediately afterwards his mother took him with her to Paris, where they remained until 1902; that they then took up a permanent residence in Switzerland; that both of them were continuously and uninterruptedly absent from Germany for a period of 10 years from and after their departure for Paris; and that appellant's mother first revisited Germany in December, 1906. It is claimed by appellant that the continuous and uninterrupted absence of his mother and himself from Germany as aforesaid, for the full period of 10 years, resulted in their expatriation as German citizens according to the law of that country.

It is in evidence that in the year 1908 appellant and his mother were formally admitted to citizenship by the Republic of Switzerland, subject, nevertheless, to the proviso that appellant was not thereby relieved from performing military duty in Germany, "unless competent authorities have released him from the body politic to which he belonged up to the present time or approved his naturalization abroad." This proviso accords with article VI of the Swiss law of June 25, 1903, regarding the acquirement of citizenship in Switzerland, which reads as follows, to wit: "Article VI. Persons who, beside Swiss citizenship, possess that of a foreign state have as against such state as long as they reside therein no claim to the rights and to the protection of a Swiss citizen." No German release or approval of the Swiss naturalization is alleged in this case; but appellant contends that, because of his prior expatriation from Germany the Swiss naturalization was unqualified in ef-

fect, and that in the years 1918 and 1919, when his property was seized by the Custodian, he possessed, and that he still possesses, the full, complete, and exclusive status of a citizen of Switzerland.

[1-3] We do not agree with this contention, for in our opinion appellant has failed to produce competent evidence to prove the continuous and uninterrupted absence of his mother and himself from Germany for the period of 10 years, beginning in or about August, 1896, and ending prior to December, 1906. The burden of proof rested upon appellant, and the only testimony introduced at the trial as to the alleged time of their departure from Germany was that of appellant himself, who was an infant at that time and could have no personal recollection of the event, but who stated that he testified from "family tradition and records." No record of the kind was produced at the trial, and "family tradition" in relation to such an event is mere hearsay and consequently incompetent. "In this case no question of pedigree; of birth, marriage, or death, as bearing on legitimacy, descent, or relationship; of ancient rights; of past events prior to controversy, was involved; nor was there any pretense that this was evidence of tradition, or historical fact, or general reputation in the community, participated in by the family." Fidelity Mutual Life Association v. Mettler, 185 U. S. 308, 321, 22 S. Ct. 662, 667 (46 L. Ed. 922).

Appellant also offered as evidence of his expatriation from Germany a certificate, dated June 11, 1923, attested by certain officers of the German Foreign Office, to the effect that appellant had forfeited his German citizenship prior to January 1, 1914, by reason of his continuous absence from Germany for more than 10 years. This was rightly rejected, for the certificate was no more than a narrative of a past event, and as such was mere hearsay. In the absence of any competent evidence in support of the claim of expatriation, appellant must be considered as a German subject when admitted to Swiss citizenship. He became possessed, therefore, of dual citizenship, which was a status recognized by both German and Swiss law, and, notwithstanding the Swiss naturalization, appellant remained subject to military duty as a German subject.

This conclusion is supported by the following testimony given at the trial by an expert witness upon German law, to wit: "Therefore, if he had not become expatriated through some other provision of law, in this particular case this man would cer-

tainly be a dual national. His naturalization in Switzerland did not denaturalize him from Germany. If there were not some other operative facts here, he would be a dual national, subject to military duty in two countries. * * * If a man has become a Swiss citizen without complying with the provisions for expatriation from Germany—and there are some cases where he may not have done that—then, if he returns to Germany, he is regarded in Germany as a German and treated accordingly, and he has the same right as a German. His Swiss citizenship for that particular purpose is utterly immaterial."

Appellant's mother died in 1910, and by her last will she appointed his uncle, who was a German citizen residing in Berlin, as his guardian; and appellant attended school in Germany, although spending his vacations in Switzerland, until the beginning of the World War. His guardian then enlisted him as a soldier in the German army, and he served as such until the end of the war, at which time he had risen to the rank of lieutenant. It appears that his appointment as a lieutenant in the German army, if accompanied by the delivery to him of a written commission, would have restored his German citizenship, even if he had been expatriated theretofore as claimed by him. But owing to the pressure upon the German War Office at the time the delivery of commissions was greatly in arrears, and none was delivered to appellant. His appointment, however, was regularly published, and he actually served as a lieutenant.

The expert testimony in the record is to the effect that the grant of German citizenship to an alien, when commissioned as an army officer, is not complete until physical delivery is made of the commission. It is reasonable to believe, however, that under circumstances like these the officer would be entitled to claim German citizenship, notwithstanding the nondelivery of his commission. After the Armistice appellant regularly applied as a lieutenant for discharge from active service and transfer to the reserve officers of the regiment, and this was granted. It is noteworthy that appellant was enlisted and served in the German army, and was transferred to the reserves, as a German subject, and not as an alien.

[4] In our opinion, it must be held upon the present record that in the years 1918 and 1919 appellant was either a German citizen, or was at least possessed of a dual citizenship, an incongruous relationship unknown to our institutions, whereby he was bound to render military service to both the German and Swiss governments. And in our opinion the latter status is not within the purview of the amendment of March 4, 1923, to the Trading with the Enemy Act. The amendment provides for the return of property to an owner who at the time when it was seized was a citizen of a country other than Germany. The term "citizen," as employed in the act, should be construed with reference to the fundamental purposes of the act, as well as the common meaning attached to the word in this country.

The Trading with the Enemy Act was enacted as a means of preventing the affected property from reaching the enemy and adding to his resources in war. Such a purpose would draw no distinction between a citizen of Germany, and a dual citizen of both Germany and Switzerland, for in either case the owner and his property would be subject to the military requirements of the enemy. Moreover, within the proper and ordinary sense of the language employed in the act as amended, a person cannot rightly be said to be a citizen or subject of a country other than Germany, when at the same time he is a citizen or subject of Germany. The legislative purpose manifestly was to exclude all citizens and subjects of Germany from the favor of the amendment, and the possession of dual citizenship in another country, in addition to German citizenship, affords no relief from that prohibition.

The decree of the lower court is affirmed, with costs.