DRAEGER SHIPPING CO., Inc., et al. v. CROWLEY, Alien Property Custodian.

District Court, S. D. New York.

May 29, 1944.

William A. Marden, of New York City, for plaintiffs.

James B. M. McNally, U. S. Atty., of New York City, George A. McNulty, Chief, Alien Property Unit, War Division, Department of Justice, A. Matt Werner, General Counsel to Alien Property Custodian, and Albert E. Arent, Sp. Asst. to Atty. Gen., War Division, Department of Justice, all of Washington, D. C., William L. Lynch, Asst. U. S. Atty., of New York City, and J. A. Fridinger, Attorney, Alien Property Unit, War Division, Department of Justice, of Arlington, Va., for defendant.

NEVIN, District Judge (sitting by designation).

In this action, plaintiffs seek certain relief by way of injunction. The complaint was filed on October 10, 1942. Owing to circumstances over which neither the court nor counsel had control, it was not finally submitted, however, until April 20, 1944.

On the same day the complaint was filed, plaintiffs moved by order to show cause, for a preliminary injunction, and on October 24, 1942, defendant moved to dismiss the complaint.

Both motions came on for hearing before Judge Bondy. On February 13, 1943, Judge Bondy denied the defendant's motion to dismiss and granted plaintiff's motion in part. Draeger Shipping Co. v. Crowley, D.C., 49 F.Supp. 215. Subsequently (May 3, 1943) Judge Bondy filed his findings of fact and conclusions of law, and entered his order accordingly.

No appeal was taken from the decision or order of Judge Bondy. It is agreed by all counsel, therefore, that the ruling of Judge Bondy is "the law of this case." In their brief (p. 2) counsel for defendant say: "Judge Bondy's decision is at the present time, the law of this case; although the defendant has not waived any of the points raised on his motion to dismiss."

In his decision (page 219 of 49 F.Supp.) Judge Bondy makes, inter alia, the following statements: "The fact that anyone other than an enemy or ally of enemy may recover his property on proving that he is not a national of a foreign or enemy country within the meaning of the Act or the President's definition, does not establish that a foreign or enemy country or national thereof within such meaning will succeed in obtaining possession of property. * * * The motion to dismiss the complaint is accordingly denied and the application of the plaintiffs granted only to the extent of directing the defendant not to liquidate the business of the com-

pany or sell its stock pending the determination whether they are nationals of a foreign or enemy country, or whether the seized property is owned or controlled by a foreign or enemy country or national thereof."

On May 4, 1943, defendant filed his answer and thereafter, on June 1, 1943, the cause came on for hearing on the merits, that is, for "determination whether they, (plaintiffs) are nationals of a foreign or enemy country, or whether the seized property is owned or controlled by a foreign or enemy country or national thereof."

There has been no material change in the pertinent facts as found by Judge Bondy, upon the record presented to him, on the respective motions, occasioned by defendant's answer or by the evidence adduced at the trial. Additional facts, however, have been disclosed, either by way of admissions in the answer or by evidence.

■ Draeger Shipping Co., Inc., one of the plaintiffs herein, was adjudicated a bankrupt in this court on June 19, 1943. A trustee in bankruptcy has possession of the assets of the corporation. At the outset of the trial, and again at the close of the case, defendant moved that Draeger Shipping Co., Inc., be dismissed as a party plaintiff. These motions were not decided at the time and are still pending. They are each and both here, and now, overruled.

The relief sought by plaintiffs, as stated (Tr. p. 6) by their counsel, is as follows: "The relief which is asked is for a decree of this Court restraining the liquidation of the business of the corporate plaintiff, and this is the relief which the corporation asks for, and to restrain the defendant from preventing the plaintiffs from accepting new business, and to restrain the defendant and his representatives from writing letters to customers of the plaintiff corporation stating that it is not accepting new business, pending the determination of the action. Fourth, adjudging that the right and title in the property seized by the Alien Property Custodian is in the plaintiff, Draeger Shipping Company, and that it is entitled to the immediate possession thereof; further, that a decree be entered directing the defendant to pay, convey, transfer, assign and deliver to it the business, money and other property so held by the defendant as Alien Property Custodian; further, declaring that the vesting order which was issued by the Alien Property Custodian is a nullity and of no effect; further, declaring that the election of one H. D. Weiser, as president and treasurer, and R. W. Watts, as secretary of the plaintiff, Draeger Shipping Company, be declared a nullity and of no effect. Now the individual plaintiff, Frederick Draeger, asks that the decree direct the defendant, as Alien Property Custodian, to transfer, assign, deliver and return to him the stock of the Draeger Shipping Company seized by the Alien Property Custodian, and that it be adjudged that the right, title and interest in and to said stock is in the individual plaintiff, Frederick Draeger, and that he is entitled to the immediate possession of this stock."

Plaintiffs insist that "Section 5(b) of 'Trading With the Enemy Act as Amended' and Executive Orders 8389 and 9095, as Amended, are unconstitutional, if the interpretation placed thereon by the Alien Property Custodian is adopted"; that "the record fails to disclose any evidence which would warrant the seizure of the property of an American Citizen," that the action taken by the Alien Property Custodian was and is illegal, and that plaintiffs are entitled to all of the relief prayed for in their complaint.

■ The constitutional question was disposed of by Judge Bondy in his decision. This Court is in full accord with the views expressed by Judge Bondy and adopts the same as its own. It has long been the settled law that any property which the enemy can use, either by actual appropriation or by the exercise of control over its owner, or which the adherents of the enemy have the power of devoting to the enemy's use, is a proper subject of confiscation. Miller v. United States, 1870, 11 Wall. 268, 306, 20 L.Ed. 135.

In their brief (pp. 36, 48) plaintiffs say: "The hodge-podge character of the evidence adduced by the defendant at the trial, shows an effort to throw in everything at hand and trust that something might stick. If ever there was a case in which the words 'conjecture and surmise' are pertinent, this is it. No Court of Justice could possibly say that such evidence as was adduced, would justify the seizure of the property of an American citizen. The character and national sentiment of Frederick Draeger, are best shown by the character and sentiment of those surrounding him personally, and of those whom he

made officers and directors of his corporation. * * * There was no internal merger of Draeger Shipping Co., and Schenker-New York. The property of Draeger Shipping Co., always remained its property, and the property of Schenker remained Schenker property. It is the plaintiff's contention that it is beyond the province of any person in the United States, to declare an American citizen a 'national' and thereby give the Government the right to confiscate his property. The 'sentence' of the Alien Property Custodian, to the effect that plaintiff Frederick Draeger was a 'national', was pronounced without giving him a hearing of any kind. In McCoy v. Mc-Coy, 29 W.Va. 794 [2 S.E. 809, 817], it was held: '* * * a sentence of a court pronounced against a party when the court did not hear him or give him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal.' Even if the court should find that Frederick Draeger might have done some imprudent act, this would not justify his characterization as a 'national', and thereby suffer the penalties which have been visited upon him at the hands of the Alien Property Custodian."

The record, either by way of admissions in the pleadings, or by the evidence adduced at the trial, discloses the following: Plaintiff, Frederick Draeger, was born in Stettin, Germany, about 70 years ago. He came to the United States in 1892—then about 18 years of age. He became a naturalized citizen in 1898. From 1915 until the outbreak of the present world war, he spent a large part of his time abroad, much of it in London, England.

He is a half-owner and a managing director of an English corporation known as Gerhard & Hey, of London, England—one of the largest forwarding concerns in the British Empire. His interest in Gerhard & Hey was acquired from the British Government.

The only real estate owned by Frederick Draeger or his wife (Tr. P. 101 et seq.) consists of a villa located near Munich, Germany. This property was purchased by Mrs. Draeger and is still used and occupied, at times, by the family.

Draeger Shipping Co., Inc., was organized by Frederick Draeger in 1922. The company was incorporated under the laws of the State of New York to engage in the business of foreign freight forwarder and customs broker, in which business it was engaged until adjudicated a bankrupt. The main office of the company was located at 17 State Street, New York City. It handled imports and exports from and to all parts of the world.

All the outstanding stock of Draeger Shipping Co., Inc., with the temporary exception of one share, has always been registered in the name of Frederick Draeger, and from the organization of the company he was its president until removed by the Alien Property Custodian after the vesting of the capital stock.

In 1935 a contract was entered into by Draeger Shipping Co., Inc., and Frederick Draeger with Schenker and Co., Inc., a New York corporation engaged in the freight forwarding business, Schenker and Co., G.m.b.H., Berlin, and Schenker Unternehmungen Holding A. G., Zurich, Switzerland (hereinafter referred to as Schenker, New York, Berlin, and Zurich, respectively). The contract provided in effect, at least, for an internal merger of Draeger Shipping Co., Inc., and Schenker, New York, and the continuation of their respective businesses as a joint enterprise with Frederick Draeger in active management.

At the time of the execution of the contract, the outstanding shares of Schenker, New York, were registered in the name of Schenker, Zurich. The Swiss corporation was a holding company for the international Schenker organization, whose headquarters were in Berlin. The Schenker organization is owned by the official German State Railway.

In early 1940 the outstanding stock of Schenker, New York, was transferred from Schenker, Zurich, to Johann P. van Dijk, a resident of Rotterdam and a Dutch national, in whose name the stock continued to be registered until September 22, 1942, at which time it was vested by the Alien Property Custodian (7 Fed.Reg. 8568). Van Dijk was manager of the Dutch Schenker firm and was acting as a representative of the Schenker organization.

From 1935 until the outbreak of war in Europe Frederick Draeger operated Draeger Shipping Co., Inc., and Schenker, New York, without attempting to conceal his contractual relationship with Schenker, Germany. The two New York corporations occupied the same offices at 17 State

Street, New York City, accounts were sought and accepted in both the Schenker and Draeger names, all business was handled by the same management, and the corporations had interlocking directors and officers. The proof shows that during this period Draeger Shipping Co., Inc., was acting for and on behalf of Schenker, Berlin. Later various steps—such as removing the name Schenker and Co., Inc., from the windows of the offices at 17 State Street, and renting a one-room office for Schenker on the tenth floor of the same building, were taken in an effort to disguise the fact that Frederick Draeger and Draeger Shipping Co., Inc., were carrying on the business of Schenker, New York, and thus acting for the benefit of and in behalf of the Schenker organization.

On April 10, 1940, with the German invasion of Norway and Denmark, the President of the United States instituted freezing control by the issuance of Executive Order 8389, 12 U.S.C.A. § 95 note. On May 10, 1940, the provisions of this Executive Order were extended to include The Netherlands, Belgium, and Luxembourg. Executive Order 8405, 12 U.S.C.A. § 95 note. By the terms of the order on that day, Schenker, New York, became a "national" of a blocked country as the registered title to the capital stock of the corporation was in van Dijk, a national of The Netherlands. Thereafter, its financial, commercial, and trade transactions were subject to Treasury Department control. On June 14, 1941, the scope of freezing control was extended to nationals of Germany and Switzerland by the issuance of Executive Order 8785, which amended Executive Order 8389.

The Secretary of the Treasury conducted an investigation with respect to Frederick Draeger and Draeger Shipping Co., Inc. As a result of this investigation, and acting under the authority of section 5(b) of the Trading with the Enemy Act, as amended, 50 U.S.C.A.Appendix, § 5(b), the Secretary of the Treasury on June 24, 1942, determined that Frederick Draeger, and Draeger Shipping Co., Inc., were "nationals" of Germany as defined in Executive Order 8389, as amended, and placed supervisors in the offices of the company.

From June 24, 1942 to September 22, 1942, the financial, commercial, and trading activities of Draeger Shipping Co., Inc., were conducted under this supervision and control. The Alien Property Cus-

todian on September 22, 1942, after conducting his own investigation, issued Vesting Order No. 161, vesting all of the capital stock of Draeger Shipping Co., Inc. The vesting order recited that Frederick Draeger and Draeger Shipping Co., Inc., were found to be "nationals" of a designated enemy country (Germany); that they were controlled by or acting for or on behalf of or as cloaks for a designated enemy country (Germany), or persons within Germany; that the national interest of the United States required that they be treated as nationals of Germany; that all the shares of capital stock of Draeger Shipping Co., Inc., were registered in the name of Frederick Draeger who held them for the benefit of Schenker and Company, Berlin, Germany; and that in the national interest, the capital stock of such corporation held in the name of Frederick Draeger was vested in the Alien Property Custodian to be held, used, administered, liquidated, sold, or otherwise dealt with in the interest of and for the benefit of the United States. This vesting order was issued pursuant to the provisions of section 5(b) of the Trading with the Enemy Act, as amended by Title III of the First War Powers Act, of 1941, § 301, and Executive Order 9095, 7 Fed.Reg. 1971, as amended by Executive Order 9193, 50 U.S.C.A.Appendix, § 6 note, 7 Fed.Reg. 5205.

Concurrently with the issuance of the vesting order, the Secretary of the Treasury revoked the license under which Draeger Shipping Co., Inc., had been operating and issued a new license permitting the continued operation of Draeger Shipping Co., Inc., provided all transactions were approved by the Alien Property Custodian. Upon the issuance of this license the Treasury representatives assigned to the supervision of Draeger Shipping Co., Inc., were withdrawn.

Thereafter the Alien Property Custodian caused new officers and directors of Draeger Shipping Company, Inc., to be elected, and Frederick Draeger removed, as president of the corporation.

 Schenker-Berlin, owned by the German Government through the German State Railways (Tr. pp. 283–331), is admittedly a national of a foreign country, by reason of its German domicile. This was conceded by plaintiff, Frederick Draeger, at the trial. Schenker-New York was under the direction and control of Schenker-Berlin. It, therefore, is a na-

tional of a foreign country. As claimed by defendant it is immaterial whether its stock was held by Schenker, Zurich, a holding company owned by the German State Railways and created as a protection against the complications of war (Tr. 329, 330), or by van Dijk, a resident of The Netherlands, who was acting as representative of the Berlin-controlled Schenker organization (Tr. 283, 332-4, Ex.E.).

Mr. Draeger testified that until the outbreak of the war in the fall of 1939, he and Draeger Shipping Co., Inc., were acting for and on behalf of Schenker-Berlin. As to these matters, the record (Tr. pp. 117, 124–128) shows as follows:

"Q. (By Mr. Arent, of counsel for defendant) And what was Schenker's business? A. (By defendant, Frederick Draeger) It was mostly import; to handle imports from Europe to the United States.

"Q. Were any instructions received from the Schenker organization in Europe as to how Schenker business should be conducted? A. Yes.

"Q. By the way, will you explain what the Schenker organization is? A. The Schenker organization is an international shipping corporation, who have offices practically in all European countries with the execption of a few countries.

"Q. Where is the management centered? A. The management center was Berlin, and Zurich, Switzerland.

"Q. Berlin and Zurich, Switzerland? A. Yes.

"Q. Where did orders regarding the conduct of the business come from? A. Berlin. * * *

"Q. After this contract went into effect in 1935 if you wanted to fire one of the Schenker employees, did you submit the matter to Berlin for approval? A. Yes.

"Q. And that was required by your contract, was it not? A. Yes, sir. * * *

"Q. Mr. Draeger, Schenker, Berlin, is a national of a foreign country is it not? A. Yes.

"Q. And under this contract you and the Draeger Shipping Company had a good many responsibilities to carry out for Schenker, Berlin, isn't that correct? A. Yes.

"Q. Then is it not a fact that during the period the contract was in force you were acting for the benefit of a national of a foreign country—in behalf of it? A.

We had to protect the interests of Schenker, New York, here.

"Q. All right, but Schenker, New York, is part of the Schenker organization which was centered in Berlin, isn't that correct? A. Schenker, Incorporated, is an American corporation.

"Q. Yes, and the instructions you got for the management of Schenker, New York, came out of Berlin? A. Yes. * * *

"Q. Now let us take the year 1935 then. During 1935 you were acting for the benefit of and in behalf of Schenker & Company, Berlin? A. Yes.

"Q. In 1936 the same was true? A. Yes.

"Q. 1937 the same was true? A. Yes.

"Q. 1938 the same was true? A. Yes.

"Q. And 1939, you say—A. No.

"Q. When in 1939 did it cease? A. At the outbreak of the war.

"Q. Did you dissolve Schenker, New York, at the beginning of the war? A. No. * * *

"Q. Mr. Draeger, I believe you testified that this contract was in force up until the time war began in Europe in 1939; was it in force for any period thereafter? A. It was originally for ten years.

"Q. So that it remained in force after the war broke out in Europe in 1939; is that correct? A. That is correct.

"Q. After war broke out in 1939 the Schenker corporation in New York continued to exist as a legal entity, did it not? A. Yes, but they could not do any business."

When the present war broke out in Europe, Mr. Draeger assumed the presidency of Schenker-New York, because "on account of the present political situation" it seemed advisable "to appoint an American citizen as President" and that Schenker-New York have all American officers (Ex.F.U, and U–1).

Mr. Draeger stated (Ex.U, and U–1) "it already makes a better appearance that the President and Directors who are here are all American citizens." He tried to discourage correspondence with the Schenker organization in Europe, giving them assurances that he was acting for the common cause and would protect their interests until such time as it would be advisable to restore more direct relations (Ex. F, S, T, U, V, and X).

On October 13, 1939, he wrote to Schenker-Berlin a letter (Ex. X) containing the following statements: " * * * I am intentionally avoiding carrying on any kind of correspondence with you, and purposely did not answer your cable. I was of the opinion that you would draw the correct conclusions from my silence. * * * What I did I did in your own interest as well as in the interest of your branch in New York, and not in my own interest. * * * Please take notice that I have already had the experience during the last war, and also know for sure, that already letters of this sort, like *.* one you have before you, may be censored on the American side. * * In case the war doesn't stop soon and America eventually enters the war on the side of England, as I think it will, I shall be forced to make changes; you can be sure that I will do it for the common interest. In no way, however, would I like to get any advice relating to this from you, since I have a far better survey from here than you."

On October 17, 1939, Mr. Draeger wrote (Ex. K and K–1) to the Schenker representative in Argentina, under the name of Schenker-New York, as follows: " * * * Please also inform us what is your method of procedure so that we might give you the necessary hints as to how to deal with your clients. For your information we inform you that here in New York we are closely connected with the Draeger Shipping Co. and Mr. F. Draeger is at the same time manager of Schenker & Co., Inc., New York. We do not know whether this is known to you. Schenker has little business to Buenos Aires; but Draeger Shipping Co., has somewhat more. We should like to request you to try to obtain business from such receivers in Buenos Aires which have German sympathies in the name of Schenker; with other firms which have the opposite mentality, thus English, French, etc., rather work for Draeger Shipping. * * * We repeat once more, with firms with German sympathy try and get the business as Schenker; when you see any difficulties then you simply act as representative of Draeger Shipping Co. With the same mail we are sending you a letterhead of Draeger Shipping so that you can see with whom you are dealing. You will see from the letterhead that Draeger Shipping represents the firm of Gerhard & Hey, Ltd. in London, which is the largest forwarding firm in Great Britain and whom you will probably know."

It seems apparent from the evidence that plaintiff, Draeger, never did and never intended to abandon his connection with the Schenker organization. After June 14, 1941, Schenker-New York paid office rent and taxes and kept books in both 1941 and 1942 (Tr. p. 353, 354). The salary of its president, Lorentz, was paid by Draeger Shipping Co., Inc., and charged to Schenker-New York until the end of January, 1942 (Tr. pp. 384, 385).

The burden of proof was upon plaintiffs to prove by a preponderance of the evidence that they were and are not "nationals" of a foreign or enemy country within the meaning of Section 5(b) of the Trading with the Enemy Act, as amended, and Executive Orders Nos. 8389 and 9095, as amended.

In his decision (page 219 of 49 F.Supp.) Judge Bondy held, as hereinabove set forth, that in order for a party (as plaintiffs herein) to recover his property, he must prove that "he is not a national of a foreign or enemy country within the meaning of the Act or the President's definition." See also Von Zedtwitz v. Sutherland, Alien Property Custodian, 58 App.D.C. 153, 26 F.2d 525, Sturchler v. Hicks, Alien Property Custodian, D.C., 17 F.2d 321.

Plaintiffs have failed to meet the burden placed upon them. On the contrary, as asserted by defendant the evidence as a whole, affirmatively and conclusively, shows that beginning April, 1935, Frederick Draeger and Draeger Shipping Co., Inc., operated Schenker-New York, under a 10-year contract with Schenker-Berlin, Zurich and New York, and that they continued long after June 14, 1941, to protect Schenker's interests in the United States by all means feasible under prevailing conditions; that Schenker-New York, and Schenker-Berlin, are "nationals" within the meaning of Section 5(b) of the Trading with the Enemy Act, as amended, and Executive Orders No. 8389, as amended, and No. 9095, as amended, and that Frederick Draeger and Draeger Shipping Co., Inc., acted in behalf and for the benefit of Schenker-New York, and Schenker-Berlin, from April, 1935, until September 22, 1942, and are "nationals" within the meaning of Section 5(b) of the Trading with the Enemy Act, as amended, and Executive

Orders No. 8389, as amended, and No. 9095, as amended.

Many authorities have been cited and discussed by counsel for the respective parties. While, by agreement of counsel, entered on March 21, 1944, oral argument was waived, extensive and illuminating briefs have been filed and considered. The applicable statutes and Executive Orders are sufficiently referred to in the decision of Judge Bondy and need not be repeated here.

In view of Judge Bondy's decision and this Court's findings of fact and conclusions of law, no useful purpose would be served in a further detailed discussion of either the facts or the authorities.

Upon a consideration of the whole of the record, the briefs and arguments of counsel and the applicable law, the court has arrived at the following findings of fact:

1. This court has jurisdiction of the parties and of the subject matter.

2. Defendant Leo T. Crowley was at all the times referred to herein, and now is, the duly appointed and qualified acting Alien Property Custodian of the United States.

3. Plaintiff Frederick Draeger at all times herein mentioned has been and now is a resident of the Borough of Manhattan, City, County and State of New York, which is within the jurisdiction of this court.

4. Plaintiff Frederick Draeger in July of 1922 organized the plaintiff Draeger Shipping Co., Inc.

5. Plaintiff Draeger Shipping Co., Inc., since July of 1922, has been and now is a domestic corporation, organized and existing under and by virtue of the laws of the State of New York, United States of America.

6. At all times since its organization in July of 1922, the plaintiff Draeger Shipping Co., Inc., has had and now has its principal place of business in the Borough of Manhattan, City, County and State of New York, and within the jurisdiction of this court.

7. At all times herein mentioned, all of the officers, directors and stockholders of plaintiff Draeger Shipping Co., Inc., have been and were citizens and residents of the United States of America.

8. Since the incorporation of the plaintiff Draeger Shipping Co., Inc., in July of 1922, Frederick Draeger has been the owner, holder and in possession of all of its outstanding stock, with the temporary exception of one share, and is so registered on the books of the plaintiff corporation.

9. Since the incorporation of the plaintiff Draeger Shipping Co., Inc., in July of 1922, plaintiff Frederick Draeger has been its president, until removed by the defendant Leo T. Crowley as Alien Property Custodian, on October 9, 1942.

10. On September 22, 1942, defendant Leo T. Crowley as Alien Property Custodian, acting under the authority of the Trading with the Enemy Act, as amended by Title III of the First War Powers Act, 1941, and Executive Order No. 9095 as amended, issued vesting order No. 161, vesting in himself as such Alien Property Custodian "all of the capital stock of Draeger Shipping Company, Inc., a New York corporation, which is a business enterprise within the United States, consisting of 1,000 shares of $100 par value common capital stock which shares are registered in the name of Frederick Draeger, New York, New York."

11. Schenker & Co., Inc. (hereinafter called "Schenker-New York") is a New York corporation whose capital stock until early 1940 was owned by Schenker Unternehmungen Holding A. G. of Zurich, Switzerland, a holding company for the international Schenker freight forwarding organization, which at all times material herein has been owned by the German State Railways and operated under the direction and control of Schenker & Co., G. m.b.H. (hereafter called "Schenker, Berlin"), a corporation organized under the laws of Germany and having its principal place of business on and since June 14, 1941 in Berlin, Germany. Since early 1940 the stock of Schenker, New York, has been registered in the name of Johann P. van Dijk, a resident of The Netherlands, who holds it for the Schenker organization.

12. Under a written contract executed in April, 1935, between Frederick Draeger, Draeger Shipping Co., Inc., and the aforementioned Schenker companies, Frederick Draeger and Draeger Shipping Co., Inc., undertook to manage and operate Schenker-New York, under the general direction and control and for the benefit of Schenker-

914

Berlin. This contract was for a term of ten years, and, although modified with respect to the division of profits as permitted by its terms, was never cancelled by the parties.

13. As a result of this contract an internal merger of Schenker-New York, and Draeger Shipping Co., Inc., took place: officers of the Draeger company became officers of Schenker-New York; Draeger and employees of the Draeger company supervised and handled Schenker-New York, business in conjunction with Schenker employees, who in turn assisted with the business of the Draeger company; and common offices, and facilities were used by both companies.

14. The relationship thus created between Frederick Draeger and Draeger Shipping Co., Inc., and the Schenker organization continued from April, 1935, until the stock of the Draeger company was vested by the Alien Property Custodian on September 22, 1942, during which period Frederick Draeger and Draeger Shipping Co., Inc., operated the business of Schenker, New York, for Schenker, Berlin.

15. Schenker-New York, and Schenker-Berlin, are "nationals" within the meaning of Section 5(b) of the Trading with the Enemy Act, as amended, and Executive Orders No. 8389, as amended, and No. 9095, as amended.

16. Frederick Draeger and Draeger Shipping Co., Inc., acted in behalf and for the benefit of Schenker-New York, and Schenker-Berlin, from April, 1935, until September 22, 1942, and are "nationals" within the meaning of Section 5(b) of the Trading with the Enemy Act, as amended, and Executive Orders No. 8389, as amended, and No. 9095, as amended.

17. Frederick Draeger and Draeger Shipping Co., Inc., have been determined by the Secretary of the Treasury and the Alien Property Custodian to be "nationals" within the meaning of Section 5(b) of the Trading with the Enemy Act, as amended, and Executive Orders No. 8389, as amended and No. 9095, as amended, and there is reasonable cause to believe that Frederick Draeger and Draeger Shipping Co., Inc., are "nationals" as therein defined.

18. When the Alien Property Custodian vested the capital stock of Draeger Shipping Co., Inc., the capital of the company had been impaired by many years of operating losses, the books of account showing a deficit of $44,414.82 as of July 1, 1942. Draeger Shipping Co., Inc., was adjudicated a bankrupt on June 19, 1943, and its assets are now in possession of a trustee in bankruptcy. The Alien Property Custodian has never vested any property of Draeger Shipping Co., Inc.

## Conclusions of Law

1. Frederick Draeger and Draeger Shipping Co., Inc., are "nationals" within the meaning of Section 5(b) of the Trading with the Enemy Act, as amended, and Executive Orders No. 8389, as amended, and No. 9095, as amended.

2. Plaintiffs have failed to prove that they are entitled to relief under the provisions of Section 9(a) of the Trading with the Enemy Act, as amended.

3. The proof affirmatively shows that plaintiffs are not entitled to relief under the provisions of Section 9(a) of the Trading with the Enemy Act, as amended.

4. Plaintiffs are not entitled to the relief prayed for in their complaint.

5. The complaint should be dismissed on the merits, at plaintiffs' costs.

Let judgment be entered accordingly.