GINSBURG, Circuit Judge,
concurring in the judgment in part and dissenting in part:
Salah El Din Ahmed Mohammed Idris and the El-Shifa Pharmaceutical Industries Company, which Idris allegedly owns, sued the United States following a missile strike against the Company’s plant in Sudan. The plaintiffs advanced several claims, only two of which remain at issue in this appeal. The Court holds both claims must be dismissed because they raise questions constitutionally committed not to the judicial but to the political branches, the alternative ground raised by the Government in the district court.
I agree that the claim the United States violated the law of nations in striking the plant and failing to pay the plaintiffs compensation should be dismissed, but I do so because the plaintiffs did not preserve that claim; we therefore have no need to pass upon a constitutional issue. I believe the claim that various officers of the United States defamed Idris in the wake of the strike should be remanded to the district court for further proceedings; the complaint, which the Government has not yet answered, does not necessarily raise a political question and may be subject to objections that do not require us to reach the constitutional issue.
I. The Law of Nations Claim
The plaintiffs first allege the United States violated international law by “destroy[ing] the Plant without justification,” Compl. ¶ 112, and by failing “to use peaceful means to resolve its ... concerns,” id. ¶ 113, in contravention of the prohibition on the use of force in the Charter of the United Nations, id. ¶ 109. The breach of this international obligation, they say, triggers the responsibility of the United States to compensate them. Id. ¶¶ 110-11. The plaintiffs accordingly seek “[a] declaration that the ... attack on the ElShifa pharmaceutical plant violated the law of nations,” which declaration they say would restore “the reputations of ElShifa and Mr. Idris” by dispelling the “suspicion that they were engaged in the production of chemical weapons or other activities associated with terrorism,” id. ¶¶ 115-16.
The district court dismissed the claim as barred by sovereign immunity, see Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 380, 5 L.Ed. 257 (1821) (“a sovereign independent State is not suable, except by its own consent”); see also United States v. Lee, 106 U.S. 196, 207-08, 1 S.Ct. 240, 27 L.Ed. 171 (1882), without reaching the Government’s alternative argument for dismissal *587 based upon the constitutional bar to judicial resolution of a political question. Although the plaintiffs sued only the United States, they invoked § 702 of the Administrative Procedures Act, which provides a waiver of immunity for any suit against the United States “seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority,” 5 U.S.C. § 702, regardless whether the suit is brought under the APA, Trudeau v. FTC, 456 F.3d 178, 186 (D.C.Cir.2006). The district court held the waiver in the APA inapplicable, however, because the plaintiffs’ law of nations claim sought to impugn only the President’s decision to strike the plant and the President is not an “agency” within the meaning of the APA. 402 F.Supp.2d 267, 272-73 (2005); see Dalton v. Specter, 511 U.S. 462, 476-77, 114 S.Ct. 1719, 128 L.Ed.2d 497 (1994).
On appeal, the plaintiffs do not take issue with the ruling that the waiver of sovereign immunity in § 702 is inapplicable insofar as they alleged the strike against the El-Shifa plant violated international law. Their opening brief states frankly “Plaintiffs no longer seek a declaration that the destruction of the plant ... violated international law.” In that respect, therefore, their claim is waived and there is no need for the court to reach the constitutional question whether the claim is barred by the political question doctrine. See Meijer, Inc. v. Biovail Corp., 533 F.3d 857, 863 (D.C.Cir.2008).
The plaintiffs do argue on appeal, however, as they did before the district court on motion to alter the judgment, that they were challenging not only the President’s decision to strike the plant but also “the CIA’s independent and final decision to deny compensation based on after-acquired evidence about the El-Shifa plant.” The waiver of sovereign immunity in the APA does apply to this claim because the CIA clearly is an “agency.”
The claim nonetheless must be dismissed because the complaint faults the Government for failing to compensate the plaintiffs only upon the premise “that the destruction of the Plant was ... not justified under the law of nations.” See Compl. ¶ 115. Having waived the argument that the strike against the plant violated the law of nations, the plaintiffs necessarily forfeited their challenge to the CIA’s failure to compensate them.* Accordingly, we have neither the need nor the occasion to address the Government’s argument that the plaintiffs’ law of nations claim raises a political question.
II. The Claim for Defamation
The second claim before us on appeal is that certain officers of the United States defamed Idris, giving rise to a “cause of action ... against the United States ... under both the common law ... and the APA.” It is worth repeating Idris’s allegations because, as the Court notes, we must “treat the factual allegations in the complaint as true.” Ct. op. at 581.
According to Idris: President Clinton and various government officials initially justified the attack to the public on the ground that the plant, which was owned by *588 the Sudanese Government, was a “chemical weapons-related facility” involved in the manufacture of EMPTA, Compl. ¶ 27 (“In Sudan, they are ... manufacturing nerve gas which could kill us all”), had no commercial purpose, id. ¶ 35, and enjoyed the suspicious protection of the Sudanese military, id. ¶ 39. Moreover, a “senior intelligence officer” reported on the day of the strike that Osama “bin Laden has made financial contributions to the Sudanese Military Industrial Complex ... a distinct entity of which, we believe, the Shifa pharmaceutical facility is [a] part,” id. ¶43. Thus, “[t]he U.S. officials who authorized the attack did not know” Idris “owned El-Shifa at the time of the attack.” Id. ¶ 65. Within a few days after the strike, however, the press began to identify him as the owner of the plant, id. ¶ 66, and U.S. officials began to retract the public statements made initially in justification for the strike. “[Rjather than admit that a terrible mistake was made ... U.S. officials ... invented] new justifications for” striking the El-Shifa plant. Id. ¶ 64. Officials claimed falsely and with reckless disregard for the truth that, among other things, (1) Idris is a financial supporter of the National Islamic Front; (2) “evidence obtained since the attack .... suggests] that Idris ... purchased the plant ... on bin Laden’s behalf’; (3) Idris “represent[s] a lot of bin Laden’s interests in Sudan”; and (4) Idris “has had financial dealings with members of Islamic Jihad” and “launders money for international Islamic groups.” Id. ¶ 66. As with the law of nations claim, Idris sought declaratory relief and argued the APA provided the requisite waiver of sovereign immunity.
The district court dismissed the defamation claim because it erroneously read the complaint to seek damages, and therefore to be subject to the Federal Tort Claims Act, which does not waive sovereign immunity for claims of defamation seeking damages. 402 F.Supp.2d at 272 (citing 28 U.S.C. § 2680(h)). In his motion to alter the judgment Idris pointed to the waiver in the APA for suits seeking declaratory relief, 5 U.S.C. § 702. The court denied the motion, again without reaching the Government’s alternative argument that the case presented a political question, this time on the ground there had been no “final agency action,” as required by § 704 of the APA. No. Civ.A. 01-731, 2007 WL 950082, at *1 (Mar. 28, 2007).
In ruling upon the motion, the district court again erred: First, the CIA had denied Idris’s request for a retraction, which certainly seems to be final agency action. See Yousuf v. Samantar, 451 F.3d 248, 251 (D.C.Cir.2006). In any event, “[t]he waiver [in § 702 of the APA] applies regardless of whether [the challenged conduct] constitutes ‘final agency action.’ ” Trudeau, 456 F.3d at 187. Finally, the requirement of final agency action in 5 U.S.C. § 704 limits only causes of action arising under the APA itself, id. at 190-91; here Idris invoked both the APA and the common law of defamation.
Today the Court affirms the district court’s erroneous dismissal of Idris’s claim for defamation on the different but inapposite constitutional ground that the allegedly defamatory statements are “ ‘inextricably intertwined’ with the underlying decision to attack the El-Shifa pharmaceutical plant.” Ct. op. at 583. The Court first asserts that Idris’s “defamation claim suffers from a [flaw similar]” to that of his claim under international law. Id. at 584. The claim based upon international law, according to the Court, presents a political question because in adjudicating it, the district court “would need to determine whether [the President’s] decision to bomb the plant was justified.” Id. at 583. Apparently, however, the Court does not really — indeed, it could not reasonably — believe the district court, in ad *589 judicating the defamation claim, would necessarily call into question the President’s decision: Idris contends the CIA’s statements came after and had nothing to do with the President’s reason for bombing the plant. See id. at 581; Bill Clinton, My Life 805 (2004). Instead, the Court reasons that, even if Idris’s claim “would not call into question the President’s true motivations for launching the missile strike,” it is nevertheless barred by the political question doctrine because the CIA’s post hoc justification may implicate other “strategic military, national security, or foreign policy objectives” of the President. Ct. op. at 585. In other words, the post hoc justification was itself a strategic military and foreign policy decision and therefore not subject to judicial review.
The Court, however, merely speculates that strategic objectives were served by the CIA’s post hoc statements about Idris. For support the Court first musters the assertion that “public justifications for discrete military action are always offered, in part at least, with strategic ... objectives in mind.” Id. If, however, the allegedly defamatory statements themselves furthered the President’s conduct of military affairs, then surely the Government would explain how.
The Government offers no such explanation in support of its motion to dismiss and therefore I am at a loss to understand why the Court struggles to create one for it. In order to imply the Government has explained how the CIA’s post hoc statements were strategic decisions, the Court quotes the assertion in the Government’s brief — as though it were evidence — that “ ‘public statements about the bombing [were] ... closely intertwined with the decision to launch the military strike.’ ” Id. Read in context, however, the Government’s statement is not even an attempt to argue the CIA’s post hoc justification was itself a strategic decision:
As the Federal Circuit held in upholding the dismissal of plaintiffs’ takings claim under the political question doctrine, the Constitution provides the courts with no authority to review the President’s determination that the nation is “at risk of imminent attack” or his determination that private property overseas is enemy property that must be destroyed to “most effectively neutralize the possibility of attack.” ... The result does not change here because plaintiffs have challenged not only the [President’s] decision to bomb the El-Shifa plant, but also [the CIA’s] public statements about the bombing that themselves are closely intertwined with the decision to launch the military strike.
Appellee’s Br. at 14-15 (internal citation omitted). Thus, far from explaining that the CIA’s post hoc statements were strategic decisions, the Government asserts only that a court cannot question the President’s decision to bomb the plant merely because the issue arises in the context of a claim for defamation.
More important, in asserting the CIA had — or, more accurately, must have had — a strategic motivation, the Court refuses to accept as true Idris’s allegations. According to Idris, “U.S. officials,” facing “profoundly embarrassing” criticism from the press, simply invented a new justification for the attack “rather than admit ... a terrible mistake.” Compl. ¶¶ 63-64. The Court labels this allegation “artful pleading” designed to “recast[ ] the terms of a dispute to make it one properly reviewed by courts.” Ct. op. at 585 n. 2. The Constitution does not, however, require us to ignore the rules governing a motion to dismiss simply because the Government has argued Idris’s defamation claim presents a political question. Indeed, factual *590 development often is necessary to determine whether a suit presents a nonjusticia-ble political question. See, e.g., Zivotofsky ex rel. Ari Z. v. Sec’y of State, 444 F.3d 614, 619-20 (D.C.Cir.2006) (remanding to district court for it to develop facts related to whether suit presented political question). The Court can label Idris’s allegation an “artful” attempt to circumvent the Constitution only because the Court assumes (a) the CIA must have had a strategic objective in mind and (b) any challenge to a strategic decision necessarily raises a political question, even if the decision was only “in part” motivated by military or foreign policy objectives, Ct. op. at 585.
In any event, the Court errs in believing Idris’s claim necessarily raises a political question simply because it implicates a strategic decision. Apparently the Court believes the Constitution grants the Executive the unreviewable discretion to make defamatory statements even if they have nothing to do with the actual justification for a military decision because (or so the Court assumes) every public explanation of a military decision is “offered, in part at least, with strategic ... objectives in mind.” Id. That proposition is not only novel and frightening, it ignores Supreme Court precedent.
To hold that Idris’s claim for defamation necessarily raises a political question, it is not enough that resolving the suit might (or might not) implicate a military decision of the President — any more than review of the Executive’s decision to detain a person as an enemy combatant might (or might not) reflect upon the military’s decision to seize that person in the war zone, see Boumediene v. Bush, — U.S. —, 128 S.Ct. 2229, 2262-74, 171 L.Ed.2d 41 (2008) (holding Detainee Treatment Act of 2005 violates habeas corpus Suspension Clause, U.S. Const, art. I, § 9, cl. 2, an aspect of separation of powers, because DTA does not allow detainee to introduce “previously unavailable exculpatory evidence”). In addressing the issues raised by such a suit, a court is asked neither to resolve any question of policy, cf. Ct. op. at 583, nor to “conduct ... the foreign relations of our government,” id. (quoting Oetjen v. Cent. Leather Co., 246 U.S. 297, 302, 38 S.Ct. 309, 62 L.Ed. 726 (1918)).
Although the Court states it does not “find decisionmaking in [the] fields [of foreign policy and national security] exclusively within the President’s Commander-in-Chief authority,” id. at 585 n. 3, implicit in the Court’s reasoning is the assumption that the Constitution bars the Congress from conferring upon Idris a cause of action to challenge the CIA’s statements, see, e.g., id. at 586 (“Plaintiffs’ defamation claim presents a challenge to the Executive’s foreign policy and national security decisionmaking, two areas clearly outside our authority”). Here, Idris asserts the CIA had a duty under both the common law and an Act of Congress (the APA) not to spread false information about him; if he is correct, then he should be able to call upon the courts to provide him the statutory remedy he seeks, see Baker v. Carr, 369 U.S. 186, 211, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (“it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance”). It simply is not the case under our Constitution that the Congress has no role in regulating the armed forces, see U.S. Const. art. I, § 8, cls. 11, 14; cf. Hamdan v. Rumsfeld, 548 U.S. 557, 126 S.Ct. 2749, 2786, 165 L.Ed.2d 723 (2006) (President’s use of military commissions must comply with statutory law) — let alone the CIA’s use of defamatory statements — such that it may not impose upon the Executive a legal obligation for the breach of which an injured party will have a remedy at law. Idris may not be defeased of his right (if any there be), nor the judiciary ousted *591 from its jurisdiction, solely because — as the Court would have it — the President “fired missiles at a target of his choosing,” Ct. op. at 583.
For support the Court cites several cases in which plaintiffs have directly challenged military decisions of the President. Id. To be sure, a challenge to the President’s decisions regarding the “training, weaponry and orders” of the military presents a political question. Gilligan v. Morgan, 413 U.S. 1, 4, 10, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973) (internal quotation marks omitted) (dismissing suit challenging decision to send National Guard to quell civil disorder on college campus); see Bancoult v. McNamara, 445 F.3d 427, 436 (D.C.Cir.2006) (dismissing challenge to “specific tactical measures allegedly taken to depopulate” island and to construct military base there); Luftig v. McNamara, 373 F.2d 664, 665-66 (D.C.Cir.1967) (dismissing suit seeking to bar deployment to Vietnam). In this case, however, Idris challenges the CIA’s subsequent portrayal of him as a terrorist — -and there is an equally clear line of cases in which we have heard, without constitutional qualms, an individual’s statutory challenge to his designation as an enemy combatant, thereby supposedly “becoming arbiter of the President’s battlefield actions,” Ct. op. at 583. See, e.g., Parhat v. Gates, 532 F.3d 834 (2008) (addressing statutory claim of wrongful detention, brought under Detainee Treatment Act); Chai v. Dep’t of State, 466 F.3d 125 (2006) (addressing statutory claim of wrongful designation as terrorist organization, brought under 8 U.S.C. § 1189); Von Zedtwitz v. Sutherland, 26 F.2d 525 (1928) (addressing statutory claim of wrongful seizure of property, brought under Trading with the Enemy Act). The Supreme Court has done the same. See Boumediene, — U.S. —, 128 S.Ct. 2229, 171 L.Ed.2d 41.
The Court finds those cases inapposite because “none ... involved a textual commitment of authority to the political branches,” Ct. op. at 585; see also id. at 586, but that merely restates the Court’s reason for concluding Idris’s claim presents a political question. The Court nowhere explains why entertaining Idris’s claim would intrude upon the President’s exclusive authority as Commander-in-Chief under the Constitution any more than would hearing a claim of wrongful detention of a person or seizure of property during a war. If anything, I would have thought the decision to detain a person or to seize property is more closely tied to the conduct of war than the decision to label Idris a supporter of terrorists.
The Court believes Parhat, Chai, and Von Zedtwitz raise “an interesting question” it need not answer, namely, where lies “the boundary between decisions properly made by the judiciary and decisions constitutionally committed to the political branches.” Id. at 586. The Court nonetheless determines that Idris’s defamation claim lies on the far side of that boundary, beyond the reach of judicial review. Although the Court may insist Idris’s claim for defamation is “clearly outside our authority,” id., it “does nothing more than assert that [his] action may affect the foreign relations of the United States[;] ... that is surely not enough” to determine whether the claim for defamation actually and necessarily raises a political question. Simon v. Iraq, 529 F.3d 1187, 1197 (D.C.Cir.2008).
Whether Idris is entitled to a trial on the merits of his claim for defamation is not clear at this stage of the litigation; the Government has not even filed its answer. Some of our cases do imply a plaintiff may obtain a retraction from the United States *592 for defamation by one of its officers, e.g., Expeditions Unlimited Aquatic Enters., Inc. v. Smithsonian Inst., 566 F.2d 289, 294 n. 16 (1977) (en banc) (dictum stating that “[u]nder certain circumstances, declaratory and injunctive relief may be obtained against defamatory statements by government officials”); see also Cmty. for Creative Non-Violence v. Pierce, 814 F.2d 663, 671-73 (1987) (remanding claim of slander brought against federal officer under D.C. common law), but there are reasons to doubt Idris has a cause of action under the APA. For one, the conduct he challenges might be “committed to agency discretion by law.” 5 U.S.C. § 701(a)(2); cf. Saavedra Bruno v. Albright, 197 F.3d 1153, 1162 (D.C.Cir.1999) (holding visa determinations are unreviewable under 5 U.S.C. § 701(a)(1) or § 702(1) and noting that no presumption of reviewability applies “[wjhen it comes to matters touching on national security or foreign affairs”). I would, however, leave it to the district court on remand to address this question in the first instance; the district court has not opined upon it and the parties have not briefed the question sufficiently in this court.
Nor is it obvious the common law would provide Idris a remedy. Federal rather than D.C. common law likely governs Idris’s claim because that claim implicates “the rights and obligations of the United States,” Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 641, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981); see also Boyle v. United Techs. Corp., 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), and under federal common law the United States may be immune from liability on the facts here alleged, see Barr v. Matteo, 360 U.S. 564, 575, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) (holding — prior to enactment of Westfall Act — executive officers enjoyed absolute immunity from liability for damages under common law of defamation if they acted within “outer perimeter” of their authority); see also Boyle, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442; see generally Robert D. Sack, Sack on Defamation § 8.2 (3d ed.1999). Alternatively, Idris’s common law right may have been preempted by a statute or statutes that occupy the field. See Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm’n, 461 U.S. 190, 203-04, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) (“Absent explicit preemptive language, Congress’ intent to supersede state law altogether may be found from a scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, because the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or because the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose” (internal quotation marks omitted)); Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941); see also Am. Ins. Ass’n v. Garamendi, 539 U.S. 396, 123 S.Ct. 2374, 156 L.Ed.2d 376 (2003); Boyle, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442.
As pleaded, Idris’s claim does not call upon the district court to inquire in any way into the “President’s true motivation” for the bombing, nor has the Government shown the claim implicates any other military objective. Still, I would not hold that the district court must entertain Idris’s claim for defamation. I would hold only that, to the extent, if any, that Idris has stated a claim upon which relief may be granted, nothing in the constitutional allocation of authority between the political and the judicial branches requires that the Court dismiss it.
*593 III. Conclusion
For the reasons stated in Part I above, and not for the reasons given by the Court, I concur in the judgment with respect to the plaintiffs’ claim based upon the law of nations. For the reasons stated in Part II above, I respectfully dissent from the Court’s disposition of Idris’s claim for defamation.

 In a cryptic footnote the Court asserts I erroneously conclude the law of nations claim was forfeited by "conflat[ing] the concepts of claims and issues,” Ct. op. at 584 n. 1, but, as noted in the text, the complaint asserts the CIA violated international law by failing to pay the plaintiffs compensation only because the attack “was ... not justified under the law of nations,” Compl. ¶ 115. Thus, the claim that the failure to pay compensation violated international law depends upon the question whether the strike violated international law, which the plaintiffs have waived regardless whether it is characterized as a "claim” or as an “issue.”