# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 8, 2006       Decided October 17, 2006

No. 03-1392

KAHANE CHAI, ET AL.,
PETITIONERS

v.

DEPARTMENT OF STATE AND
CONDOLEEZZA RICE, SECRETARY OF STATE,
RESPONDENTS

On Petition for Review of an Order of the
Secretary of State

*Kenneth Klein* argued the cause and filed the briefs for petitioners.

*Douglas N. Letter*, Terrorism Litigation Counsel, U.S. Department of Justice, argued the cause for respondent. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, and *Mark S. Davies*, Attorney.

Before: GINSBURG, *Chief Judge*, and SENTELLE, *Circuit Judge,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*:  In October 2003 Secretary of State Colin Powell redesignated Kahane Chai as a Foreign Terrorist Organization (FTO), redesignated Kach as an alias of Kahane Chai, and newly designated Kahane.org as an alias of Kahane Chai.  After a *de novo* reconsideration in 2004, the Secretary reaffirmed all three designations.  The three entities now petition for revocation of the 2003 designations.  We conclude the designations complied with applicable statutory and constitutional requirements and, accordingly, we deny the petition.

## I.  Background

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) authorizes the Secretary of State to designate an entity as a FTO if the Secretary finds:

> (A) the organization is a foreign organization;
> (B) the organization engages in terrorist activity ... or retains the capability and intent to engage in terrorist activity or terrorism[]; and
> (C) the terrorist activity or terrorism of the organization threatens the security of United States nationals or the national security of the United States.

8 U.S.C. § 1189(a)(1).  "Terrorist activity" is defined, in relevant part, as

> any activity which is unlawful under the laws of the place where it is committed ... and which involves any of the following:

> (IV) An assassination.

(V) The use of any —

(a) biological agent, chemical agent, or nuclear weapon or device, or
(b) explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain),

with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property.

(VI) A threat, attempt, or conspiracy to do any of the foregoing.

*Id.* § 1182(a)(3)(B)(iii). To "engage in terrorist activity" includes, among other acts, "solicit[ing] funds or other things of value for — (aa) a terrorist activity [or] (bb) a terrorist organization." *Id.* § 1182(a)(3)(B)(iv).

Designation as a FTO has three main consequences: (1) "Except as authorized by the Secretary, any financial institution that becomes aware that it has possession of, or control over, any funds in which a foreign terrorist organization ... has an interest shall ... retain possession of, or maintain control over such funds," 18 U.S.C. § 2339B(a)(2); (2) "Any alien who ... is a representative ... of ... a terrorist organization," 8 U.S.C. § 1182(a)(3)(B)(i), is "ineligible to receive visas and ineligible to be admitted to the United States," *id.* § 1182(a); (3) and it becomes a crime to "knowingly provide[] material support or resources to [the] foreign terrorist organization, or attempt[] or conspire[] to do so," 18 U.S.C. § 2339B(a)(1).

Kach and Kahane Chai, organizations the stated purpose of which is to restore the biblical state of Israel, were declared

terrorist organizations by the Israeli Cabinet in 1994 pursuant to Israel's 1948 Terrorism Law. The Secretary of State first designated Kahane Chai and Kach as FTOs in 1997, Designation of Foreign Terrorist Organizations, 62 Fed. Reg. 52,650, 52,650 (Oct. 8), and redesignated them as such in 1999, Designation of Foreign Terrorist Organizations, 64 Fed. Reg. 55,112, 55,112 (Oct. 8), and 2001, Redesignation of Foreign Terrorist Organizations, 66 Fed. Reg. 51,088, 51,089 (Oct. 5). In 2001 the Secretary also designated Kach and 16 other organizations as aliases of Kahane Chai. *Id.* Neither Kahane Chai nor any of its aliases sought judicial review of any of these designations.

On September 3, 2003 the Department of State wrote letters to five persons it thought "might represent" Kahane Chai stating that the Secretary proposed to redesignate Kahane Chai, Kach, and Kahane Chai's other aliases as FTOs. The notice stated that the unclassified portion of the administrative record before the Department would be provided to any representative of Kahane Chai or of an alias who so requested within ten days from receipt thereof; the representative would have 15 days from receipt of the record to submit a response.

On September 16 Samuel Abady, Esq. sent a letter in which he identified himself as counsel to one of the addressees of the September 3 notice; noted his response was timely; conveyed his client's position that Kahane Chai, Kach, and the other presumed aliases were "legitimate, Jewish activist organizations ... not one of [which] practices, supports or advocates terrorism"; and demanded disclosure of the administrative record. The Department of State deemed the letter defective because it did not say Mr. Abady was requesting the record "as a representative of Kahane Chai or one of its aliases." On October 1 Kenneth Klein, Esq. sent a letter to the Department in which he identified himself as the attorney for a representative of Kach and requested the record, but the Department deemed

his letter untimely.

On October 2, 2003 Secretary of State Colin Powell redesignated Kahane Chai as a FTO and Kach and 16 others as aliases of Kahane Chai.  Redesignation of Foreign Terrorist Organizations, 68 Fed. Reg. 56,860, 56,861.  At the same time the Secretary newly designated 20 more entities as aliases of Kahane Chai, including Kahane.org, newkach.org, Kahane.net, and Kahanetzadak.com.  *Id.*  Drawing upon both classified and unclassified information, the Secretary concluded that Kahane Chai engaged in terrorist activity by (1) using explosives or firearms with intent to endanger the safety of individuals or cause substantial damage to property, (2) threatening and conspiring to carry out assassinations, and (3) soliciting funds and members for a terrorist organization.  The Secretary also concluded that Kahane Chai retains the capability and intent to engage in terrorist activity.

After the petitioners had filed for judicial review of the Secretary's decision, the State Department agreed to provide Mr. Klein and Mr. Abady, as representatives of Kahane Chai, with the unclassified portion of the administrative record, to accept relevant submissions for inclusion in the record, and to make a *de novo* decision on redesignation.  In 2004, the Secretary conducted the *de novo* review and concluded that, although the record included conflicting information on many of the bombings previously attributed to Kahane Chai, the rest of the record supported its redesignation.  The Secretary also concluded that Kahane.net was no longer an alias of Kahane Chai and revoked its designation as a FTO, but left in place all other designations as aliases of Kahane Chai.  Foreign Terrorists and Terrorist Organizations, 70 Fed. Reg. 4,186 (Jan. 28, 2005).

## II. Analysis

The three petitioners, in a joint brief, raise both statutory and constitutional objections to their designations. First, they argue the designations were made without substantial support in the administrative record. Second, they contend the State Department's refusal to provide them with the administrative record prior to the 2003 designations denied them due process, in violation of the Fifth Amendment to the Constitution of the United States. Third, the petitioners allege that designating a website as a FTO violates the First Amendment to the Constitution. Finally, the petitioners contend the State Department discriminated upon the basis of religion because it designated as FTOs the websites only of Jewish organizations.

## A. Statutory Claims

Our standard of review is deferential. Under the AEDPA (as amended by Pub. L. No. 104-208, § 356, 110 Stat. 3009, 3009-644 (1996)) we are to set aside the Secretary's designation of a FTO only if that designation was

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitation, or short of statutory right;
> (D) lacking substantial support in the administrative record taken as a whole or in classified information submitted to the court ... or
> (E) not in accord with the procedures required by law.

8 U.S.C. § 1189(c). Our review is to be "based solely upon the administrative record, except that the Government may submit,

for ex parte and in camera review, classified information used in making the designation." *Id.* Moreover, we make no judgment as to the accuracy of the information in the record; "our only function is to decide if the Secretary, on the face of things, had enough information before [him] to come to the conclusion that the organizations were foreign and engaged in terrorism." *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17, 25 (D.C. Cir. 1999) (*PMOI I*).

The petitioners challenge as a denial of due process the Secretary's use of classified information in designating them FTOs. We need not resolve that claim, however, for in this case we can uphold the designations based solely upon the unclassified portion of the administrative record. *See People's Mojahedin Org. of Iran v. Dep't of State*, 327 F.3d 1238, 1243 (D.C. Cir. 2003) (*PMOI II*); *id.* at 1245 (Edwards, J., concurring).

1.  Redesignation of Kahane Chai as a FTO

The petitioners assert the Secretary's finding Kahane Chai threatened an assassination is based upon a faulty interpretation of the record. In response, the Department notes the Secretary based his conclusion upon four documents. The first is a transcript of a July 1, 2002 radio broadcast by the Jerusalem Voice of Israel Network reporting that death threats had been made against Israeli police officers investigating the "Jewish terrorist squad case," an apparent reference to the attempted bombing by right-wing extremists of an Arab school for girls. An activist with ties to Kach was arrested in connection with the bombing. The second document is an article in the November 3, 2003 newspaper Ma'ariv reporting that Kach activists had organized demonstrations near the house of "one of the heads" of the Jewish Affairs Division of the Shin Bet (General Security Service) to protest the conditions of the detained members of the

"Jewish terrorist squad" accused of the attempted bombing. The protestors had sprayed graffiti spelling out the official's name (the publication of which was banned), and demanding he "stop abusing Jews." The official's wife is quoted as saying, "Our family is facing harassment and threats." The third document is a May 28, 2003 summary by the Foreign Broadcast Information Service (FBIS) of news reports indicating right-wing activists, including members of Kach, had launched a "personal incitement campaign" against then–Prime Minister Sharon. The fourth document summarizes a July 2003 radio broadcast by the Jerusalem Voice of Israel Network reporting that "Shin Bet Director Dichter said ... the threat to the life of Prime Minister Sharon had grown" and "there was a threat from ... several dozen Kahanist extremists." The Secretary held these four documents sufficient evidence to support the redesignation of Kahane Chai and we agree.

The petitioners apparently assume that if the record does not expressly tie Kahane Chai to a threat of assassination, then the Secretary may not designate it as a FTO on that ground. We do not read "substantial support" so narrowly; rather, the record need provide only a sufficient basis for a reasonable person to conclude that Kahane Chai was likely behind such a threat. *See PMOI I*, 182 F.3d at 25; *cf. Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) ("substantial evidence" standard requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

In this case the record indicates — and the petitioners do not deny — that Kahane Chai venerates Baruch Goldstein because he massacred 29 Arab worshippers at the Al-Haram Al-Ibrahimi (Sanctuary of Abraham) or Tomb of the Patriarchs in Hebron. Following the attack Kahane Chai issued a statement calling Goldstein a "hero" and in 2002 its alter ego Kach went so far as to advertise a summer camp for children the program

of which included "a pilgrimage to [Goldstein's] grave." Kahane Chai's glorification of the murderous Goldstein, though hardly dispositive, surely makes more credible the evidence supporting the organization's involvement in threats of assassination.

With this in mind, the Secretary reasonably found Kahane Chai was responsible for the death threats made in 2002 against the police officers investigating the Jewish terrorist squad case. The record does not identify any one group as being responsible for the threats, but the evidence suggests Kach was involved in the underlying crime. A man described in a cable from the American Consulate in Jerusalem to the Secretary of State as "a leader" of Kach — which is to say, Kahane Chai — was "reportedly arrested in connection with the attempted bombing." Clearly, Kach/Kahane Chai took a strong interest in the affair, as indicated by the demonstrations at the home of the Shin Bet official. Surely the Secretary could reasonably conclude that an organization (1) known to approve of terrorist tactics, including the mass murder of Arab worshippers, (2) possibly linked to the attempted bombing of an Arab school, and (3) demonstrably interested in the latter affair, was responsible for the death threats made against the officers investigating that crime. (Kahane Chai does not argue that death threats against police officers are not threats of assassination and we therefore take the point as conceded.)

Finally, the Secretary reasonably found Kahane Chai had threatened the life of then–Prime Minister Sharon. Shin Bet Director Avi Dichter warned of an increased threat to Sharon's life based upon comments from both "right-wing Jewish extremists and Palestinian terrorist organizations," including among the former "several dozen Kahanist extremists." The petitioners claim not all Kahanists are members of Kahane Chai and therefore argue the alleged threat cannot be linked to

Kahane Chai. The record provides some support for the petitioners' point about membership, but we do not invalidate a designation simply because it is logically possible that the Secretary's conclusion might be wrong. Rather, our task is to determine whether there is in the record substantial support for the Secretary's conclusion. And there is: The Shin Bet Director clearly identified a threat from "Kahanist extremists" and the Secretary could reasonably infer that a Kahanist extremist is likely a member of Kahane Chai.

Upon the basis of the foregoing analysis, we conclude the Secretary's redesignation of Kahane Chai as a FTO has substantial support in the record. Therefore, we consider neither the Department's other evidence in support of this redesignation nor Kahane Chai's objections thereto.

2. Designation of Kach and Kahane.org

When a FTO is known by another name, the organization may be designated a FTO under that name as well. *See Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 200 (D.C. Cir. 2001) (*NCRI I*) ("If the Secretary has the power to work those dire consequences [associated with designation] on an entity calling itself 'Organization A,' the Secretary must be able to work the same consequences on the same entity while it calls itself 'Organization B'"). The petitioners contend the Secretary's redesignation of Kach as an alias of Kahane Chai lacks substantial support in the record. In response, the Government points both to a report by the Center for Defense Information stating that the groups have "an overlapping membership of several dozen core members," and to Kahane Chai leader Michael Guzofsky's public statement, quoted in the *New York Times*, that "if we can't be KACH or Kahane Chai we will be simply Kahane." In addition, the declaration of Kenneth Piernick, then the Acting Chief of International Terrorism

Operations Section II, Counterterrorism Division, Federal Bureau of Investigation, states that "the principal US members of Kahane Chai/KACH have consistently" changed the names of their organization in an attempt to evade legal responsibility for their actions.

This evidence provides substantial support for the Secretary's redesignation of Kach as an alias of Kahane Chai. The organizations protest that they are distinct because, as Mr. Piernick himself attests, Kahane Chai was formed at the instance of Guzofsky and others "who believed that KACH was not taking a strong enough stand against the Arabs." That was in 1990, however. As the Department correctly pointed out in the analysis it prepared for the Secretary of the materials submitted by counsel for the petitioners, "separate groups with overlapping membership and similar goals may effectively merge and become one organization" over time. Tellingly, the petitioners did not present any evidence to suggest the two organizations, although apparently different in 1990, were still separate and distinct in 2003 or 2004.

The petitioners also claim the Secretary's designation of Kahane.org as a FTO lacks substantial support. Under the AEDPA, if a FTO "so dominates and controls" an entity that "the latter can no longer be considered meaningfully independent from the former," *Nat'l Council of Resistance of Iran v. Dep't of State*, 373 F.3d 152, 158 (D.C. Cir. 2004) (*NCRI II*), then the controlled entity may be deemed a FTO.[*] A weaker principal-agent relationship may be sufficient as well. *See id.*

---

[*] In *NCRI II* we referred to this test as the requirement for designation as an alias of a FTO. 373 F.3d at 158. Because there is a difference between an alias of a FTO, that is, a different name for the same organization, and an entity that is not meaningfully independent of a FTO, for clarity we describe the latter as a "controlled entity."

The record contains an analysis of Kahane.org by the FBIS concluding "there is little difference between the agendas and the websites" of Kach and Kahane Chai on the one hand and those of Kahane.org on the other. This conclusion was based upon an analysis of the website's "content, design, and hyperlinks." The report also identifies Kahane.org's "billing contact" as Michael Guzovsky — a leader, as we have seen, of Kahane Chai, and one who believed a change of name was just the thing to evade responsibility.

Kahane.org argues the analysis by the FBIS does not provide substantial support for its designation as a controlled entity of Kahane Chai because "many organizations that have similar ideologies and interests have common links and sometimes have similar layouts in their web pages." Again this argument rests upon the mistaken premise that substantial support means conclusive proof. On the contrary, the Secretary is not obliged to negate every exculpatory possibility raised by a candidate for designation as a FTO. He may, that is, adduce substantial support for a conclusion that, if all the facts were known, might be erroneous.

In this case, the identification of Guzofsky, the chameleon-like leader of Kahane Chai, as the billing contact for Kahane.org, in combination with the similarity of the website's agenda to that of Kahane Chai, provides substantial support for the conclusion that Kahane.org is not "meaningfully independent" of Kahane Chai. We therefore hold the Secretary had sufficient information before him to conclude that Kach is an alias and Kahane.org is a controlled entity of Kahane Chai.

B. Due Process

An organization with a sufficient connection to the United States has the right to be heard "at a meaningful time and in a

meaningful manner," *NCRI I*, 251 F.3d at 208 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)), before being deprived of a protected interest in liberty or property.  Consequently, unless it makes a showing of particularized need not to do so, *id.* at 208, the Government must notify such an organization of its impending designation as a FTO and of the unclassified items upon which the Government proposes to base that designation. *Id.* at 208-09.  Furthermore, the organization must be given an opportunity to present in written form such evidence as it can to rebut the evidence in the record or otherwise to fend off its impending designation.  *Id.* at 209.

The present petitioners were not given access to the administrative record before they were designated or redesignated FTOs in 2003.  The Government defends this omission on the grounds that the Abady letter did not indicate it was written on behalf of a representative of Kahane Chai or an alias thereof and the Klein letter was received too late.  The petitioners respond that, although Abady did not expressly say he was acting on behalf of a representative of Kahane Chai, he did say he wrote as counsel for a named individual who, as State must have known, was one of the addressees of the notice the Department sent to persons it thought "might represent" Kahane Chai, and in the circumstances that was sufficient.  Moreover, they point out that the notice did not indicate Kahane.org was under consideration for designation as a FTO.

We do not resolve the petitioners' claims of procedural error because the alleged errors were, in the particular circumstances of this case, clearly rendered harmless.  In response to the petitioners' procedural objections, the Government offered to do and in 2004 did a *de novo* determination of their status.  This time the petitioners were provided, and took full advantage of, the opportunity to inspect and to supplement the record upon which the review would be

based.[*]   The result was the same as in 2003 — all three petitioners were designated or redesignated FTOs — and the petitioners have not challenged the 2004 review.  It follows apodictically that providing the petitioners with the administrative record prior to the 2003 designation would have had no effect upon the outcome of which they now complain.

The petitioners nonetheless claim the procedures used in the 2003 review harmed them because the Department's subsequent agreement to do a *de novo* review caused a delay in filing the administrative record, and thereby delayed their opportunity for judicial review.  Even if true, however, the point is irrelevant. An error is harmless if it was not material to the outcome of the proceeding.  *PDK Labs., Inc. v. U.S. Drug Enforcement Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004).  The outcome of the 2004 review, which was unaffected by any allegedly defective procedure, shows the outcome of the 2003 review would not have been different if the Government had provided the petitioners with the record and an opportunity to present evidence in 2003.[**]

---

[*] The 2004 record appears to differ from the 2003 record only by the addition of the petitioners' responses and deletion of the materials, previously incorporated by reference, from the 1997, 1999, and 2001 designation and redesignation proceedings against Kahane Chai.

[**] The petitioners' due process objection also suggests a question of mootness and therefore of our jurisdiction.  Although neither party has raised the issue, the court is obliged nonetheless to determine that it has jurisdiction.  *Ass'n of Admin. Law Judges v. FLRA*, 397 F.3d 957, 961 n.* (D.C. Cir. 2005).  As the Supreme Court explained in *Calderon v. Moore*, 518 U.S. 149 (1996), "[A]n appeal should ... be dismissed as moot when, by virtue of an intervening event, a court of appeals cannot grant 'any effectual relief whatever' in favor of the appellant."  *Id.* at 150 (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).  In the present case the question is whether the 2004

C. Free Speech

The petitioners argue that designating Kahane.org a FTO violates the First Amendment because the website is a "medium of free speech"; it "expresses a viewpoint[, b]ut it does not advocate terror." As the Government points out, however, and as we have held, the AEDPA does not purport to restrain speech; the statute "is not aimed at interfering with the expressive component of [an organization's] conduct." *PMOI II,* 327 F.3d at 1244 (quoting *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1135 (9th Cir. 2000)). Instead, the focus is upon the nonexpressive component of the organization's conduct, *see id.*, and the Government clearly may restrain such conduct when it facilitates terrorist activity. *See Humanitarian Law*, 205 F.3d at 1134-35 ("While the First Amendment protects the expressive component of seeking and donating funds, expressive *conduct* receives significantly less protection than pure speech").

Kahane.org has been designated a controlled entity of Kahane Chai and we have upheld that designation. A restraint upon the conduct of Kahane.org is therefore tantamount to a restraint upon the conduct of Kahane Chai itself. *See NCRI I*, 251 F.3d at 200. And it is established that the restraints imposed upon a FTO by the AEDPA — namely the organization's loss of access to funds held by financial institutions subject to United States law, the inability of alien representatives of the FTO to receive visas or enter the United States, and the prohibition upon

---

designation is an intervening event that forecloses relief from the 2003 designation. We think not. The possibility of prosecution pursuant to 18 U.S.C. § 2339B(a)(1) of any individual who knowingly gave material support to Kahane Chai or any of its designated aliases during the time between the 2003 and 2004 reviews is a collateral consequence that creates an exception to the mootness doctrine. *PMOI II*, 327 F.3d at 1244 n.2.

knowingly donating to the FTO — do not violate the FTO's first amendment right to speak, *see PMOI II*, 327 F.3d at 1244-45; *see also Humanitarian Law*, 205 F.3d at 1135-36, a point not even Kahane Chai challenges. It follows that the AEDPA's restraints upon Kahane.org do not violate its first amendment right to speak.

## D. Religious Discrimination

Kahane.org maintains the State Department discriminated against it upon the basis of religion because the Department in 2003, the first year in which it designated any websites as FTOs, "designat[ed] only Jewish websites, all alleged aliases of Kahane Chai, when other FTOs have websites, and sometimes use those sites for despicable purposes." This claim implicitly assumes websites designated as FTOs are the appropriate universe within which to determine whether there has been discrimination against a particular religion. The petitioners offer no defense of that assumption, we see none, and common sense suggests the appropriate universe for evaluation of a discrimination claim is the complete list of designated FTOs, which, as the petitioners acknowledge, includes many non-Jewish organizations. Consequently, we find no evidence of religious discrimination at work in the designation of Kahane.org.

## III. Conclusion

For the foregoing reasons, we hold the Secretary's 2003 redesignations of Kahane Chai and Kach, and his designation of Kahane.org, were based upon substantial support in the record and did not violate the petitioners' constitutional rights. Accordingly, the petition for review is

*Denied.*