# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 7, 2008     Decided March 27, 2009

No. 07-5174

EL-SHIFA PHARMACEUTICAL INDUSTRIES COMPANY AND
SALAH EL DIN AHMED MOHAMMED IDRIS,
APPELLANTS

v.

UNITED STATES OF AMERICA,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 01cv00731)

———

*Christian G. Vergonis* argued the cause for appellants. With him on the briefs were *Stephen J. Brogan*, *Timothy J. Finn*, and *Katherine E. Stern*.

*C. Frederick Beckner III*, Deputy Assistant Attorney General, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Jeffrey S. Bucholtz*, Acting Assistant Attorney General, *Jeffrey A. Taylor*, U.S. Attorney, and *Mark B. Stern* and *Dana J. Martin*, Attorneys.

Before: GINSBURG, HENDERSON, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

Opinion concurring in the judgment in part and dissenting in part filed by *Circuit Judge* GINSBURG.

GRIFFITH, *Circuit Judge*:  In 1998, the President of the United States ordered a missile strike against a pharmaceutical plant in Sudan that he believed was connected to the terrorist activities of Osama bin Laden. The owners of the plant sued the United States, challenging several allegedly defamatory statements made by senior executive branch officials justifying the strike as well as the government's failure to compensate them for the destruction of the plant. The district court dismissed plaintiffs' complaint, and we affirm on the ground that it presents a nonjusticiable political question.

**I.**

Because we are asked to review the grant of a motion to dismiss, we treat the factual allegations in the complaint as true. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). In August 1998, the terrorist network led by Osama bin Laden bombed American embassies in Kenya and Tanzania. Days later, the United States responded with a missile strike against a pharmaceutical plant in North Khartoum, Sudan, owned by plaintiffs El-Shifa Pharmaceutical Industries Company (El-Shifa) and Salah El Din Ahmed Mohammed Idris.

President Clinton justified the attack by publicly claiming that the El-Shifa plant was a "terrorists' base of operation" and "associated with the bin Laden network." Consistent with this claim, high-ranking executive branch officials also stated their belief that bin Laden financed the plant, which was

owned by the Sudan Military Industrial Complex Corporation, made no commercial products, and, most ominously, was involved in the production of chemical weapons. To support this latter accusation, the officials pointed to a soil sample from the plant that included a chemical known as O-ethylmethyl phosphonothioic acid, referred to as EMPTA, which is used in the manufacture of nerve gas.

Plaintiffs allege the Clinton Administration was wrong on all counts about its justifications for striking the plant. Neither bin Laden nor the Sudan Military Industrial Complex Corporation had ties to the plant, no chemical weapons agents such as EMPTA were ever present, and the plant produced only medicinal products, including over half the pharmaceuticals used in Sudan.

Once they learned that their initial justifications for the attack were false, Clinton Administration officials offered a new explanation that portrayed Idris, the actual owner of the plant, as a friend and supporter of terrorists. In particular, and as reported in several newspapers, anonymous executive branch officials claimed Idris was linked to bin Laden. The *Washington Post*, for example, reported "one official" as saying, "What we're learning about [Idris] leads us to suspect that he's involved in money laundering, that he's involved in representing a lot of bin Laden's interests in Sudan." Vernon Loeb & Bradley Graham, *Sudan Plant Was Probed Months Before Attack*, WASH. POST, Sept. 1, 1998, at A14. According to plaintiffs, these statements were false.

Plaintiffs took several actions to recoup their losses from the attack. They first filed a lawsuit in the United States Court of Federal Claims seeking $50 million as just compensation under the Takings Clause of the Constitution. The court dismissed the suit as nonjusticiable under the political

question doctrine and the United States Court of Appeals for the Federal Circuit affirmed. *See El-Shifa Pharm. Indus. Co. v. United States*, 378 F.3d 1346, 1370 (Fed. Cir. 2004). Plaintiffs also filed an administrative claim with the Central Intelligence Agency (CIA) under the Federal Tort Claims Act (FTCA), seeking compensation for the destruction of the plant as well as a retraction of the allegedly defamatory statements about El-Shifa and Idris.

After the CIA denied the claim, plaintiffs filed this action against the United States under the FTCA seeking at least $50 million in damages for the government's alleged negligence and trespass in carrying out the attack. At issue on appeal are two further claims. The plaintiffs also sought declaratory judgments that the statements linking them to "Osama bin Laden, international terrorist organizations and the production of chemical weapons" were false and that the government's refusal to compensate them for the attack violated the law of nations. The district court granted the government's motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction, *see* FED. R. CIV. P. 12(b)(1), concluding that sovereign immunity barred all of plaintiffs' claims. *El-Shifa Pharm. Indus. Co. v. United States*, 402 F. Supp. 2d 267, 270–73 (D.D.C. 2005). The court also noted that the complaint "likely present[ed] a nonjusticiable political question." *Id.* at 276. Plaintiffs filed a motion to alter the judgment with respect to their claims for equitable relief, which the district court denied. *El-Shifa Pharm. Indus. Co. v. United States*, No. 01-731 (D.D.C. Mar. 28, 2007).

On appeal, plaintiffs challenge only the dismissal of their claims for equitable relief for defamation and under the law of nations. They restrict their defamation claim to statements about Idris and their law of nations claim to the refusal to pay compensation for the attack. We have jurisdiction under 28

U.S.C. § 1291 (2000), and we review the district court's grant of the motion to dismiss de novo, *see Carter v. Wash. Metro. Area Transit Auth.*, 503 F.3d 143, 145 (D.C. Cir. 2007).

## II.

The government urges us to affirm the district court's dismissal of this case on the ground that it presents a nonjusticiable political question. Because we affirm on this basis, we do not address the government's other arguments. *See Nemariam v. Fed. Democratic Republic of Eth.*, 491 F.3d 470, 481 (D.C. Cir. 2007).

Early in the nation's history, Chief Justice John Marshall, in seminal words that shaped the development of the political question doctrine, explained that the limited authority the Constitution grants to the judiciary to resolve disputes does not extend to all complaints about the actions of the Executive:

> The province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion. Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court.

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803). In *Baker v. Carr*, 369 U.S. 186 (1962), the Supreme Court explained that the political question doctrine precludes courts from considering cases that involve

> a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards

for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* at 217. As *Baker*'s first factor indicates, the doctrine is "primarily a function of the separation of powers," *id.* at 210, and prohibits the judiciary from reviewing "policy choices and value determinations *constitutionally committed* for resolution to the halls of Congress or the confines of the Executive Branch," *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986) (emphasis added).

Disputes involving national security and foreign policy decisions are "quintessential sources of political questions." *Bancoult v. McNamara*, 445 F.3d 427, 433 (D.C. Cir. 2006). The Constitution places these policy decisions in the hands of the President and Congress—not the judiciary. *See Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918) ("The conduct of the foreign relations of our government is committed by the Constitution to the executive and legislative—'the political'—departments of the government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision."); *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005) ("[T]here could . . . be no doubt that decision-making in the fields of foreign policy and national security is textually committed to the political branches of government."); *Comm. of U.S. Citizens Living in Nicar. v. Reagan*, 859 F.2d 929, 933–34 (D.C. Cir.

1988) (noting that "foreign policy decisions are the subject of . . . a textual commitment").

Even though "it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance," *Baker*, 369 U.S. at 211, the political question doctrine looms over plaintiffs' claims, this being a case that arises out of a decision to launch a military attack. We begin our analysis with a proposition upon which both parties agree: it is not for the federal courts to review the President's battlefield decisions. Appellee's Br. 18–21; Appellants' Reply Br. 2; *see Gilligan v. Morgan*, 413 U.S. 1, 10–11 (1973); *Bancoult*, 445 F.3d at 436; *Luftig v. McNamara*, 373 F.2d 664, 665–66 (D.C. Cir. 1967) (per curiam). President Clinton, in his capacity as Commander-in-Chief, fired missiles at a target of his choosing to pursue a military objective he had determined was in the national interest. Under the Constitution, this decision is immune from judicial review.

Although plaintiffs attempt to distance their law of nations and defamation claims from the nonjusticiable question of why the President ordered the missile strike, both claims nonetheless present questions "inextricably intertwined" with the underlying decision to attack the El-Shifa pharmaceutical plant. Plaintiffs' law of nations claim asserts that under customary international law a state must compensate a foreign national for the unjustified destruction of property. Plaintiffs allege the United States violated this principle by failing to compensate them for the destruction of their plant. In passing judgment on this claim, the district court could not avoid becoming arbiter of the President's battlefield actions and would need to determine whether his decision to bomb the plant was justified. *See* Appellants' Reply Br. 4 (acknowledging this issue "could require the

Court to consider whether El-Shifa was, in fact, a chemical weapons facility").

This a court cannot do. We have consistently held that courts are not a forum for second-guessing the merits of foreign policy and national security decisions textually committed to the political branches. *See Gonzalez-Vera v. Kissinger*, 449 F.3d 1260, 1263–64 (D.C. Cir. 2006) (dismissing a suit concerning alleged unlawful U.S. assistance to the Pinochet regime because the challenged actions "were 'inextricably intertwined with the underlying' foreign policy decisions constitutionally committed to the political branches" (quoting *Bancoult*, 445 F.3d at 436)); *see also Harbury v. Hayden*, 522 F.3d 413, 420 (D.C. Cir. 2008) (dismissing a suit against American officials alleged to have unlawfully conspired with the Guatemalan army because it sought a "determination[] whether the alleged conduct *should* have occurred, which impermissibly would require examining the wisdom of the underlying policies"); *Bancoult*, 445 F.3d at 436 (dismissing a suit challenging the tactical measures allegedly taken in depopulating island territories to build a naval base because the measures were "inextricably intertwined" with an exercise of "the foreign policy and national security powers entrusted . . . to the political branches"); *Schneider*, 412 F.3d at 194–95 (dismissing a suit alleging that the United States assisted in the kidnapping, torture, and death of a Chilean general during the Cold War because it challenged a foreign policy decision textually committed to the political branches). This precedent controls our decision here. Plaintiffs' law of nations claim asks us to review whether the President was justified in striking the El-Shifa plant. Courts have no business hearing such claims.[1]

---

[1] We disagree with our dissenting colleague's conclusion that the law of nations claim has been forfeited. *See* Dissenting Op. at 3.

Plaintiffs' defamation claim suffers from a similar flaw. The complaint plainly acknowledges that executive branch officials offered the allegedly defamatory statements in justification of the President's decision to attack the plant. Compl. ¶ 1 (stating the action arises out of "false and defamatory statements made by United States government officials seeking to justify [the destruction of the El-Shifa pharmaceutical plant]"); *id.* ¶ 64 (concluding that U.S. officials offered these statements as "a new justification for their attack"). Consider the review the district court would need to undertake in ruling on this claim. To prevail in their

---

Plaintiffs fully brief the claim challenging the CIA's failure to compensate, which the district court also addressed, and so it must be addressed here. The dissent assumes that the law of nations claim replicates the abandoned claim that the attack was unjustified. That reasoning mistakenly conflates the concepts of claims and issues. The *claim* in the challenge to the attack was that plaintiffs were entitled to a declaratory judgment that the President was wrong to order the strike (Claim 1). That claim has been forfeited. The law of nations *claim* is that plaintiffs are entitled to a declaratory judgment that the CIA wrongfully refused to compensate plaintiffs (Claim 2). An *issue* in Claim 2 is whether the President unjustifiably ordered the strike, for if the attack was justified no compensation was due. The question presented in Claim 1 is also an issue in Claim 2. The dissent wrongly concludes that because Claim 1 is forfeited and because it raises an issue in Claim 2, Claim 2 is also forfeited. Claim 1 challenged an action by the President, whose sovereign immunity is not waived by the Administrative Procedure Act (APA). By contrast, Claim 2 challenges the action of a federal agency whose sovereign immunity *is* waived by the APA, 5 U.S.C. § 702 (2006). Crucially, the relief requested in Claim 1 ran against the President, while in Claim 2 it runs against the CIA. Although judicial review of Claim 2 may require review of an issue presented in Claim 1, Claim 2 is not barred by sovereign immunity and is properly before us.

defamation suit, the plaintiffs must show that the statements made to justify the attack were false. *See generally* RESTATEMENT (SECOND) OF TORTS § 558 (1977). The district court, then, could not avoid the question whether Idris was in fact associated with bin Laden, meaning a judicial decision for the plaintiffs would directly contradict the Clinton Administration's ultimate stated justification for launching the missile strike.

The dissent notes that this allegedly defamatory justification came after the plant was bombed and thus argues that the plaintiffs' claim would not call into question the President's true motivations for launching the missile strike. *See* Dissenting Op. at 6. But both Idris and the dissent admit that the challenged statements were offered in justification of the decision to bomb the plant. *See id.* at 8 (citing Compl. ¶¶ 63–64). We have no trouble concluding that the President's public justifications for discrete military action are always offered, in part at least, with strategic military, national security, or foreign policy objectives in mind. The making of such justifications is itself a policy decision that cannot be separated from the conduct of foreign relations and the exercise of the war power that it explains. *See* Appellee's Br. 15 ("[P]ublic statements about the bombing . . . are closely intertwined with the decision to launch the military strike.").[2] Accordingly, we conclude that a decision on the defamation claim would necessarily cross the barrier marked by the

---

[2] According to the dissent, Idris can avoid dismissal here by stating that the President's justifications for the missile strike were made not in furtherance of national security or foreign policy, but merely to avoid public embarrassment. *See* Dissenting Op. at 7–8. Implicit in the dissent's argument on this point is a suggestion, which we reject, that plaintiffs can avoid the political question bar at the motion to dismiss stage by artful pleading that recasts the terms of a dispute to make it one properly reviewed by courts.

political question doctrine. *See Schneider*, 412 F.3d at 194 ("[T]here could . . . be no doubt that decision-making in the fields of foreign policy and national security is textually committed to the political branches of government."); *cf. Wilson v. Libby*, 535 F.3d 697, 704 (D.C. Cir. 2008) (holding that the political question doctrine did not apply in a case involving "disclosures made by high-level executive branch officials when speaking with the press" because plaintiffs did not "challenge[] any foreign policy or national security decisions").[3]

The dissent responds by arguing that judicial review of the allegedly defamatory statements about Idris is no more of an intrusion upon the Executive's national security decisions than is judicial review of, for example, an enemy combatant determination, which the political question doctrine does not forbid. *See* Dissenting Op. at 9–11 (citing *Boumediene v. Bush*, 128 S. Ct. 2229 (2008); *Parhat v. Gates*, 532 F.3d 834 (D.C. Cir. 2008); *Chai v. Dep't of State*, 466 F.3d 125 (D.C. Cir. 2006); *Von Zedtwitz v. Sutherland*, 26 F.2d 525 (D.C. Cir. 1928)). But none of the cases cited by the dissent involved a textual commitment of authority to the political branches. *Boumediene* found in the Suspension Clause a textual commitment to the judiciary of authority to review enemy combatant determinations resulting in prolonged

---

[3] The dissent assumes that we find decisionmaking in these fields exclusively within the President's Commander-in-Chief authority. *See* Dissenting Op. at 9–11. We express no such opinion. Rather, we simply rest our holding on the proposition that the conduct of our foreign relations is committed to the political departments, "and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision," *Oetjen*, 246 U.S. at 302.

detention. *See* 128 S. Ct. at 2247. Likewise, in *Parhat*,[4] *Chai*,[5] and *Von Zedtwitz*,[6] we were not called upon to scrutinize decisions textually committed to a coordinate branch of government. In raising these cases, the dissent presents an interesting question concerning the boundary between decisions properly made by the judiciary and decisions constitutionally committed to the political branches. Fortunately, we need not decide where that boundary lies. Plaintiffs' defamation claim presents a challenge to the Executive's foreign policy and national security decisionmaking, two areas clearly outside our authority.

## III.

We conclude that this case presents a nonjusticiable political question. The judgment of the district court dismissing plaintiffs' claims is

*Affirmed.*

---

[4] *Parhat*, 532 F.3d at 839 (citing the Detainee Treatment Act, section 1005(e)(2)(A) of which gives this court "exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant").

[5] *Chai*, 466 F.3d at 128–29 (citing 8 U.S.C. § 1189(c) (2006), which allows an entity designated as a terrorist organization under the Antiterrorism and Effective Death Penalty Act to seek judicial review in this court).

[6] *Von Zedtwitz*, 26 F.2d at 153–54 (citing the Trading with the Enemy Act, section 9(a) of which provides for judicial review of certain seizures of property).

GINSBURG, *Circuit Judge*, concurring in the judgment in part and dissenting in part:  Salah El Din Ahmed Mohammed Idris and the El-Shifa Pharmaceutical Industries Company, which Idris allegedly owns, sued the United States following a missile strike against the Company's plant in Sudan.  The plaintiffs advanced several claims, only two of which remain at issue in this appeal.  The Court holds both claims must be dismissed because they raise questions constitutionally committed not to the judicial but to the political branches, the alternative ground raised by the Government in the district court.

I agree that the claim the United States violated the law of nations in striking the plant and failing to pay the plaintiffs compensation should be dismissed, but I do so because the plaintiffs did not preserve that claim; we therefore have no need to pass upon a constitutional issue.  I believe the claim that various officers of the United States defamed Idris in the wake of the strike should be remanded to the district court for further proceedings; the complaint, which the Government has not yet answered, does not necessarily raise a political question and may be subject to objections that do not require us to reach the constitutional issue.

## I.  The Law of Nations Claim

The plaintiffs first allege the United States violated international law by "destroy[ing] the Plant without justification," Compl. ¶ 112, and by failing "to use peaceful means to resolve its ... concerns," *id.* ¶ 113, in contravention of the prohibition on the use of force in the Charter of the United Nations, *id.* ¶ 109.  The breach of this international obligation, they say, triggers the responsibility of the United States to compensate them.  *Id.* ¶¶ 110–11.  The plaintiffs accordingly seek "[a] declaration that the ... attack on the El-Shifa pharmaceutical plant violated the law of nations," which

declaration they say would restore "the reputations of El-Shifa and Mr. Idris" by dispelling the "suspicion that they were engaged in the production of chemical weapons or other activities associated with terrorism," *id.* ¶¶ 115–16.

The district court dismissed the claim as barred by sovereign immunity, *see Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 380 (1821) ("a sovereign independent State is not suable, except by its own consent"); *see also United States v. Lee*, 106 U.S. 196, 207–08 (1882), without reaching the Government's alternative argument for dismissal based upon the constitutional bar to judicial resolution of a political question. Although the plaintiffs sued only the United States, they invoked § 702 of the Administrative Procedures Act, which provides a waiver of immunity for any suit against the United States "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority," 5 U.S.C. § 702, regardless whether the suit is brought under the APA, *Trudeau v. FTC*, 456 F.3d 178, 186 (D.C. Cir. 2006). The district court held the waiver in the APA inapplicable, however, because the plaintiffs' law of nations claim sought to impugn only the President's decision to strike the plant and the President is not an "agency" within the meaning of the APA. 402 F. Supp. 2d 267, 272–73 (2005); *see Dalton v. Specter*, 511 U.S. 462, 476–77 (1994).

On appeal, the plaintiffs do not take issue with the ruling that the waiver of sovereign immunity in § 702 is inapplicable insofar as they alleged the strike against the El-Shifa plant violated international law. Their opening brief states frankly "Plaintiffs no longer seek a declaration that the destruction of the plant ... violated international law." In that respect, therefore, their claim is waived and there is no need for the

court to reach the constitutional question whether the claim is barred by the political question doctrine. *See Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 863 (D.C. Cir. 2008).

The plaintiffs do argue on appeal, however, as they did before the district court on motion to alter the judgment, that they were challenging not only the President's decision to strike the plant but also "the CIA's independent and final decision to deny compensation based on after-acquired evidence about the El-Shifa plant." The waiver of sovereign immunity in the APA does apply to this claim because the CIA clearly is an "agency."

The claim nonetheless must be dismissed because the complaint faults the Government for failing to compensate the plaintiffs only upon the premise "that the destruction of the Plant was ... not justified under the law of nations." *See* Compl. ¶ 115. Having waived the argument that the strike against the plant violated the law of nations, the plaintiffs necessarily forfeited their challenge to the CIA's failure to compensate them.* Accordingly, we have neither the need nor the occasion to address the Government's argument that the plaintiffs' law of nations claim raises a political question.

---

* In a cryptic footnote the Court asserts I erroneously conclude the law of nations claim was forfeited by "conflat[ing] the concepts of claims and issues," Ct. op. at 8–9 n.1, but, as noted in the text, the complaint asserts the CIA violated international law by failing to pay the plaintiffs compensation only because the attack "was ... not justified under the law of nations," Compl. ¶ 115. Thus, the claim that the failure to pay compensation violated international law depends upon the question whether the strike violated international law, which the plaintiffs have waived regardless whether it is characterized as a "claim" or as an "issue."

4

## II. The Claim for Defamation

The second claim before us on appeal is that certain officers of the United States defamed Idris, giving rise to a "cause of action ... against the United States ... under both the common law ... and the APA." It is worth repeating Idris's allegations because, as the Court notes, we must "treat the factual allegations in the complaint as true." Ct. op. at 2.

According to Idris: President Clinton and various government officials initially justified the attack to the public on the ground that the plant, which was owned by the Sudanese Government, was a "chemical weapons-related facility" involved in the manufacture of EMPTA, Compl. ¶ 27 ("In Sudan, they are ... manufacturing nerve gas which could kill us all"), had no commercial purpose, *id.* ¶ 35, and enjoyed the suspicious protection of the Sudanese military, *id.* ¶ 39. Moreover, a "senior intelligence officer" reported on the day of the strike that Osama "bin Laden has made financial contributions to the Sudanese Military Industrial Complex ... a distinct entity of which, we believe, the Shifa pharmaceutical facility is [a] part," *id.* ¶ 43. Thus, "[t]he U.S. officials who authorized the attack did not know" Idris "owned El-Shifa at the time of the attack." *Id.* ¶ 65. Within a few days after the strike, however, the press began to identify him as the owner of the plant, *id.* ¶ 66, and U.S. officials began to retract the public statements made initially in justification for the strike. "[R]ather than admit that a terrible mistake was made ... U.S. officials ... invent[ed] new justifications for" striking the El-Shifa plant. *Id.* ¶ 64. Officials claimed falsely and with reckless disregard for the truth that, among other things, (1) Idris is a financial supporter of the National Islamic Front; (2) "evidence obtained since the attack .... suggest[s] that Idris ... purchased the plant ... on bin Laden's behalf"; (3) Idris "represent[s] a

lot of bin Laden's interests in Sudan"; and (4) Idris "has had financial dealings with members of Islamic Jihad" and "launders money for international Islamic groups." *Id.* ¶ 66. As with the law of nations claim, Idris sought declaratory relief and argued the APA provided the requisite waiver of sovereign immunity.

The district court dismissed the defamation claim because it erroneously read the complaint to seek damages, and therefore to be subject to the Federal Tort Claims Act, which does not waive sovereign immunity for claims of defamation seeking damages. 402 F. Supp. 2d at 272 (citing 28 U.S.C. § 2680(h)). In his motion to alter the judgment Idris pointed to the waiver in the APA for suits seeking declaratory relief, 5 U.S.C. § 702. The court denied the motion, again without reaching the Government's alternative argument that the case presented a political question, this time on the ground there had been no "final agency action," as required by § 704 of the APA. No. Civ.A. 01-731, 2007 WL 950082, at *1 (Mar. 28, 2007).

In ruling upon the motion, the district court again erred: First, the CIA had denied Idris's request for a retraction, which certainly seems to be final agency action. *See Yousuf v. Samantar*, 451 F.3d 248, 251 (D.C. Cir. 2006). In any event, "[t]he waiver [in § 702 of the APA] applies regardless of whether [the challenged conduct] constitutes 'final agency action.'" *Trudeau*, 456 F.3d at 187. Finally, the requirement of final agency action in 5 U.S.C. § 704 limits only causes of action arising under the APA itself, *id.* at 190–91; here Idris invoked both the APA and the common law of defamation.

Today the Court affirms the district court's erroneous dismissal of Idris's claim for defamation on the different but inapposite constitutional ground that the allegedly defamatory

statements are "'inextricably intertwined' with the underlying decision to attack the El-Shifa pharmaceutical plant." Ct. op. at 7. The Court first asserts that Idris's "defamation claim suffers from a [flaw similar]" to that of his claim under international law. *Id.* at 9. The claim based upon international law, according to the Court, presents a political question because in adjudicating it, the district court "would need to determine whether [the President's] decision to bomb the plant was justified." *Id.* at 7. Apparently, however, the Court does not really — indeed, it could not reasonably — believe the district court, in adjudicating the defamation claim, would necessarily call into question the President's decision: Idris contends the CIA's statements came after and had nothing to do with the President's reason for bombing the plant. *See id.* at 2–3; BILL CLINTON, MY LIFE 805 (2004). Instead, the Court reasons that, even if Idris's claim "would not call into question the President's true motivations for launching the missile strike," it is nevertheless barred by the political question doctrine because the CIA's *post hoc* justification may implicate other "strategic military, national security, or foreign policy objectives" of the President. Ct. op. at 10. In other words, the *post hoc* justification was itself a strategic military and foreign policy decision and therefore not subject to judicial review.

The Court, however, merely speculates that strategic objectives were served by the CIA's *post hoc* statements about Idris. For support the Court first musters the assertion that "public justifications for discrete military action are always offered, in part at least, with strategic … objectives in mind." *Id.* If, however, the allegedly defamatory statements themselves furthered the President's conduct of military affairs, then surely the Government would explain how.

The Government offers no such explanation in support of its motion to dismiss and therefore I am at a loss to understand why the Court struggles to create one for it. In order to imply the Government has explained how the CIA's *post hoc* statements were strategic decisions, the Court quotes the assertion in the Government's brief — as though it were evidence — that "'public statements about the bombing [were] … closely intertwined with the decision to launch the military strike.'" *Id*. Read in context, however, the Government's statement is not even an attempt to argue the CIA's *post hoc* justification was itself a strategic decision:

> As the Federal Circuit held in upholding the dismissal of plaintiffs' takings claim under the political question doctrine, the Constitution provides the courts with no authority to review the President's determination that the nation is "at risk of imminent attack" or his determination that private property overseas is enemy property that must be destroyed to "most effectively neutralize the possibility of attack." … The result does not change here because plaintiffs have challenged not only the [President's] decision to bomb the El-Shifa plant, but also [the CIA's] public statements about the bombing that themselves are closely intertwined with the decision to launch the military strike.

Appellee's Br. at 14–15 (internal citation omitted). Thus, far from explaining that the CIA's *post hoc* statements were strategic decisions, the Government asserts only that a court cannot question the President's decision to bomb the plant merely because the issue arises in the context of a claim for defamation.

More important, in asserting the CIA had — or, more accurately, must have had — a strategic motivation, the Court

refuses to accept as true Idris's allegations. According to Idris, "U.S. officials," facing "profoundly embarrassing" criticism from the press, simply invented a new justification for the attack "rather than admit … a terrible mistake." Compl. ¶¶ 63–64. The Court labels this allegation "artful pleading" designed to "recast[] the terms of a dispute to make it one properly reviewed by courts." Ct. op. at 10 n.2. The Constitution does not, however, require us to ignore the rules governing a motion to dismiss simply because the Government has argued Idris's defamation claim presents a political question. Indeed, factual development often is necessary to determine whether a suit presents a nonjusticiable political question. *See, e.g.*, *Zivotofsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 619–20 (D.C. Cir. 2006) (remanding to district court for it to develop facts related to whether suit presented political question). The Court can label Idris's allegation an "artful" attempt to circumvent the Constitution only because the Court assumes (a) the CIA must have had a strategic objective in mind and (b) any challenge to a strategic decision necessarily raises a political question, even if the decision was only "in part" motivated by military or foreign policy objectives, Ct. op. at 10.

In any event, the Court errs in believing Idris's claim necessarily raises a political question simply because it implicates a strategic decision. Apparently the Court believes the Constitution grants the Executive the unreviewable discretion to make defamatory statements even if they have nothing to do with the actual justification for a military decision because (or so the Court assumes) every public explanation of a military decision is "offered, in part at least, with strategic … objectives in mind." *Id.* That proposition is not only novel and frightening, it ignores Supreme Court precedent.

To hold that Idris's claim for defamation *necessarily* raises a political question, it is not enough that resolving the suit might (or might not) implicate a military decision of the President — any more than review of the Executive's decision to detain a person as an enemy combatant might (or might not) reflect upon the military's decision to seize that person in the war zone, *see Boumediene v. Bush*, 128 S. Ct. 2229, 2262–74 (2008) (holding Detainee Treatment Act of 2005 violates habeas corpus Suspension Clause, U.S. CONST. art. I, § 9, cl. 2, an aspect of separation of powers, because DTA does not allow detainee to introduce "previously unavailable exculpatory evidence"). In addressing the issues raised by such a suit, a court is asked neither to resolve any question of policy, *cf.* Ct. op. at 6, nor to "conduct ... the foreign relations of our government," *id.* (quoting *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918)).

Although the Court states it does not "find decisionmaking in [the] fields [of foreign policy and national security] exclusively within the President's Commander-in-Chief authority," *id.* at 11 n.3, implicit in the Court's reasoning is the assumption that the Constitution bars the Congress from conferring upon Idris a cause of action to challenge the CIA's statements, *see, e.g.*, *id.* at 12 ("Plaintiffs' defamation claim presents a challenge to the Executive's foreign policy and national security decisionmaking, two areas clearly outside our authority"). Here, Idris asserts the CIA had a duty under both the common law and an Act of Congress (the APA) not to spread false information about him; if he is correct, then he should be able to call upon the courts to provide him the statutory remedy he seeks, *see Baker v. Carr*, 369 U.S. 186, 211 (1962) ("it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance"). It simply is not

the case under our Constitution that the Congress has no role in regulating the armed forces, *see* U.S. CONST. art. I, § 8, cls. 11, 14; *cf. Hamdan v. Rumsfeld*, 548 U.S. 557, 126 S. Ct. 2749, 2786 (2006) (President's use of military commissions must comply with statutory law) — let alone the CIA's use of defamatory statements — such that it may not impose upon the Executive a legal obligation for the breach of which an injured party will have a remedy at law. Idris may not be defeased of his right (if any there be), nor the judiciary ousted from its jurisdiction, solely because — as the Court would have it — the President "fired missiles at a target of his choosing," Ct. op. at 7.

For support the Court cites several cases in which plaintiffs have directly challenged military decisions of the President. *Id*. To be sure, a challenge to the President's decisions regarding the "training, weaponry and orders" of the military presents a political question. *Gilligan v. Morgan*, 413 U.S. 1, 4, 10 (1973) (internal quotation marks omitted) (dismissing suit challenging decision to send National Guard to quell civil disorder on college campus); *see Bancoult v. McNamara*, 445 F.3d 427, 436 (D.C. Cir. 2006) (dismissing challenge to "specific tactical measures allegedly taken to depopulate" island and to construct military base there); *Luftig v. McNamara*, 373 F.2d 664, 665–66 (D.C. Cir. 1967) (dismissing suit seeking to bar deployment to Vietnam). In this case, however, Idris challenges the CIA's subsequent portrayal of him as a terrorist — and there is an equally clear line of cases in which we have heard, without constitutional qualms, an individual's statutory challenge to his designation as an enemy combatant, thereby supposedly "becoming arbiter of the President's battlefield actions," Ct. op. at 7. *See, e.g.*, *Parhat v. Gates*, 532 F.3d 834 (2008) (addressing statutory claim of wrongful detention, brought under Detainee Treatment Act); *Chai v. Dep't of State*, 466 F.3d 125 (2006)

(addressing statutory claim of wrongful designation as terrorist organization, brought under 8 U.S.C. § 1189); *Von Zedtwitz v. Sutherland*, 26 F.2d 525 (1928) (addressing statutory claim of wrongful seizure of property, brought under Trading with the Enemy Act). The Supreme Court has done the same. *See Boumediene*, 128 S. Ct. 2229.

The Court finds those cases inapposite because "none ... involved a textual commitment of authority to the political branches," Ct. op. at 11; *see also id.* at 12, but that merely restates the Court's reason for concluding Idris's claim presents a political question. The Court nowhere explains why entertaining Idris's claim would intrude upon the President's exclusive authority as Commander-in-Chief under the Constitution any more than would hearing a claim of wrongful detention of a person or seizure of property during a war. If anything, I would have thought the decision to detain a person or to seize property is more closely tied to the conduct of war than the decision to label Idris a supporter of terrorists.

The Court believes *Parhat*, *Chai*, and *Von Zedtwitz* raise "an interesting question" it need not answer, namely, where lies "the boundary between decisions properly made by the judiciary and decisions constitutionally committed to the political branches." *Id.* at 12. The Court nonetheless determines that Idris's defamation claim lies on the far side of that boundary, beyond the reach of judicial review. Although the Court may insist Idris's claim for defamation is "clearly outside our authority," *id.*, it "does nothing more than assert that [his] action may affect the foreign relations of the United States[;] … that is surely not enough" to determine whether the claim for defamation actually and necessarily raises a political question. *Simon v. Iraq*, 529 F.3d 1187, 1197 (D.C. Cir. 2008).

12

\* \* \*

Whether Idris is entitled to a trial on the merits of his claim for defamation is not clear at this stage of the litigation; the Government has not even filed its answer. Some of our cases do imply a plaintiff may obtain a retraction from the United States for defamation by one of its officers, *e.g.*, *Expeditions Unlimited Aquatic Enters., Inc. v. Smithsonian Inst.*, 566 F.2d 289, 294 n.16 (1977) (en banc) (dictum stating that "[u]nder certain circumstances, declaratory and injunctive relief may be obtained against defamatory statements by government officials"); *see also Cmty. for Creative Non-Violence v. Pierce*, 814 F.2d 663, 671–73 (1987) (remanding claim of slander brought against federal officer under D.C. common law), but there are reasons to doubt Idris has a cause of action under the APA. For one, the conduct he challenges might be "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *cf. Saavedra Bruno v. Albright*, 197 F.3d 1153, 1162 (D.C. Cir. 1999) (holding visa determinations are unreviewable under 5 U.S.C. § 701(a)(1) or § 702(1) and noting that no presumption of reviewability applies "[w]hen it comes to matters touching on national security or foreign affairs"). I would, however, leave it to the district court on remand to address this question in the first instance; the district court has not opined upon it and the parties have not briefed the question sufficiently in this court.

Nor is it obvious the common law would provide Idris a remedy. Federal rather than D.C. common law likely governs Idris's claim because that claim implicates "the rights and obligations of the United States," *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981); *see also Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988), and under

federal common law the United States may be immune from liability on the facts here alleged, *see Barr v. Matteo*, 360 U.S. 564, 575 (1959) (holding — prior to enactment of Westfall Act — executive officers enjoyed absolute immunity from liability for damages under common law of defamation if they acted within "outer perimeter" of their authority); *see also Boyle*, 487 U.S. 500; *see generally* ROBERT D. SACK, SACK ON DEFAMATION § 8.2 (3d ed. 1999). Alternatively, Idris's common law right may have been preempted by a statute or statutes that occupy the field. *See Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983) ("Absent explicit preemptive language, Congress' intent to supersede state law altogether may be found from a scheme of federal regulation … so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, because the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or because the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose" (internal quotation marks omitted)); *Hines v. Davidowitz*, 312 U.S. 52 (1941); *see also Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003); *Boyle*, 487 U.S. 500.

\* \* \*

As pleaded, Idris's claim does not call upon the district court to inquire in any way into the "President's true motivation" for the bombing, nor has the Government shown the claim implicates any other military objective. Still, I would not hold that the district court must entertain Idris's claim for defamation. I would hold only that, to the extent, if any, that Idris has stated a claim upon which relief may be granted, nothing in the constitutional allocation of authority

between the political and the judicial branches requires that the Court dismiss it.

## III.  Conclusion

For the reasons stated in Part I above, and not for the reasons given by the Court, I concur in the judgment with respect to the plaintiffs' claim based upon the law of nations. For the reasons stated in Part II above, I respectfully dissent from the Court's disposition of Idris's claim for defamation.